Julie A. WALKER, Dennis C. Walker and Jason Walker, by his guardian *ad litem,* C. L. Gaylord, Plaintiffs-Appellants-Petitioners,

v.

Bryan S. BIGNELL, Ann Bignell, Mutual Service Insurance Company, a foreign corporation, Defendants,

PEPIN COUNTY, a Wisconsin municipal corporation, Employers Mutual Liability Insurance Company of Wisconsin, a Wisconsin corporation, Waterville Township, a Wisconsin municipal corporation, Elwood Myers and Francis Sam, Defendants-Respondents.

Supreme Court

*No. 79–1674. Argued January 6, 1981.—Decided February 2, 1981.*

(Also reported in 301 N.W.2d 447.)

For the petitioners there were briefs by *C. M. Bye, Stuart J. Krueger* and *Gaylord, Bye, Rodli & Krueger, S.C.,* of River Falls, and oral argument by *Stuart J. Krueger.*

For the respondents Waterville Township and Francis Sam there was a brief by *Dane F. Morey* and *Whelan, Morey, Ricci & Chambers, S.C.,* of Durand, and oral argument by *Dane F. Morey.*

For the other respondents there was a brief by *Douglas M. Johnson* and *Garvey, Anderson, Kelly & Ryberg, S.C.,* of Eau Claire, and oral argument by *Douglas M. Johnson.*

WILLIAM G. CALLOW, J.    This is a review of a decision of the court of appeals which affirmed an order granting summary judgment entered by the circuit court

for Pepin county, the Hon. Gary B. Schlosstein presiding, in favor of the defendants Pepin County and Waterville Township.

This action was commenced by the plaintiffs to recover damages for personal injuries sustained by Julie Walker and her son Jason in an automobile accident on July 10, 1978, near the intersection of Pepin County Highway P and South Kirk Road, a town road located in Waterville Township, Pepin County, Wisconsin. The Walkers, traveling westbound on Highway P in a vehicle being operated by Mrs. Walker, were struck by a vehicle operated by defendant Bryan S. Bignell which had turned left from South Kirk Road onto Highway P eastbound. In their amended complaint the plaintiffs alleged that the areas adjacent to County Highway P and South Kirk Road were so overgrown with weeds that the view of the intersection by approaching drivers was obstructed and that the two municipal defendants and their agents were negligent in failing to keep those areas free from visual obstructions.

The municipal defendants moved for summary judgment on the ground that a municipality has no duty to cut weeds and brush on the untraveled portions of roadways in order to assure roadway users a clear view at intersections. The circuit court granted the motion, concluding that there existed neither a statutory nor a common law duty to cut roadside weeds to provide unobstructed vision and that the municipalities had not assumed such a duty because of the weed control program followed annually by Pepin County officials. The court of appeals affirmed, concluding that neither sec. 66.96 (2) [1] nor sec. 81.15,[2] Stats., imposed upon municipalities

---

[1] Sec. 66.96(2), Stats., provides:

"66.96 Noxious weeds.

". . .

"(2) Every person shall destroy all noxious weeds on all lands which he shall own, occupy or control. The person having immediate charge of any public lands shall destroy all noxious weeds

a duty to cut roadside vegetation to assure unobstructed vision at intersections, and further that no duty to do so exists at common law. *Walker v. Bignell*, 96 Wis.2d 471, 292 N.W.2d 355 (Ct. App. 1980). Although we agree with the court of appeals, we reverse and remand for further proceedings on the question of the municipalities' liability under a statute not considered by the courts below.

We perceive two issues before us on this review:

I. Whether the defendant municipalities and their agents are subject to liability for failing to keep weeds

---

on such lands. The highway patrolman on all federal, state or county trunk highways shall destroy all noxious weeds on that portion of the highway which he patrols. The town board shall cause to be destroyed all noxious weeds on the town highways."

[2] Sec. 81.15, Stats., provides:

"81.15 Damages caused by highway defects; liability of town and county. If damages happen to any person or his or her property by reason of the insufficiency or want of repairs of any highway which any town, city or village is bound to keep in repair, the person sustaining the damages shall have a right to recover the damages from the town, city or village. If the damages happen by reason of the insufficiency or want of repairs of a highway which any county by law or by agreement with any town, city or village is bound to keep in repair, or which occupies any land owned and·controlled by the county, the county shall be liable for the damages and the claim for damages shall be against the county. If the damages happen by reason of the insufficiency or want of repairs of a bridge erected or maintained at the expense of 2 or more towns the action shall be brought against all the towns liable for the repairs of the bridge and upon recovery of judgment the damages and costs shall be paid by the towns in the proportion in which they are liable for the repairs; and the court may direct the judgment to be collected from each town for its proportion only. The amount recoverable by any person for any damages so sustained shall not exceed $25,000. The procedures under s. 895.43 shall apply to the commencement of actions brought under this section. No action may be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless the accumulation existed for 3 weeks."

and brush trimmed at highway intersections under principles of common law negligence; and

II. Whether the defendant municipalities and their agents are subject to civil liability for injuries caused by their failure to trim right-of-way vegetation in violation of sec. 80.01(3), Stats.[3]

## I.

The plaintiffs argue that the defendant municipalities have a nonstatutory duty to maintain the nontraveled portions of highway rights of way in such a manner as to permit motorists an unobstructed view of highway intersections. Although unable to cite any case authority from this jurisdiction in support of that proposition, they contend that such a duty may be inferred from prior cases dealing with municipal tort liability. Initially the plaintiffs argue that, after this court's decision in *Holytz v. Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962),

---

[3] Sec. 80.01(3), Stats., provides:

"(3) Beautification and protection. No lands abutting on any highway, and acquired or held for highway purposes, shall be deemed discontinued for such purpose as long as they abut on any highway. All lands acquired for highway purposes after June 23, 1931 may be used for any purpose that the public authorities in control of such highway shall deem to conduce to the public use and enjoyment thereof. Such authorities may improve such lands by suitable planting, to prevent the erosion of the soil or to beautify the highway. The right to protect and to plant vegetation in any highway laid out prior to said date may be acquired in any manner that lands may be acquired for highway purposes. It shall be unlawful for any person to injure any tree or shrub, or cut or trim any vegetation, or make any excavation in any highway laid out after said date or where the right to protect vegetation has been acquired, without the consent of the highway authorities and under their direction but such authorities shall remove, cut or trim or consent to the removing, cutting or removal of any tree, shrub or vegetation in order to provide safety to users of the highway."

which abrogated the general rule of governmental immunity from tort liability, "[m]unicipalities now had a common law duty to conduct their ministerial functions in a non-negligent manner." They then cite *Stippich v. Milwaukee,* 34 Wis.2d 260, 149 N.W.2d 618 (1967), as illustrative of the principle that municipalities have certain common law duties which may subject them to tort liability. In *Stippich* this court held that a municipality may be liable on a negligence theory for unsafe conditions of sidewalks that would not have been considered defects under the statute which had limited municipal liability for highway defects prior to the *Holytz* decision. Concluding that there is in this state no particular bar to this court finding a duty upon the municipalities to cut intersection vegetation, the plaintiffs cite *Stewart v. Lewis,* 292 So.2d 303 (La. App. 1974), in which the Louisiana court of appeals concluded that a county highway department was negligent in failing to cut intersection vegetation in order to provide a clear view, and urge us to hold likewise.

The defendant municipalities respond that the prevailing weight of judicial authority favors no municipal liability for injuries caused by a failure to keep roadside vegetation trimmed in the absence of a statute so providing. *Boyle v. City of Phoenix,* 115 Ariz. 106, 563 P.2d 905 (1977) ; *Bohm v. Racette,* 118 Kan. 670, 236 P. 811 (1925) ; *Owens v. Town of Booneville,* 206 Miss. 345, 40 So.2d 158 (1949) ; *Belt v. City of Grand Forks,* 68 N.W.2d 114 (N.D. 1955) ; *Sylor v. Irwin,* 308 N.Y.S.2d 937, 62 Misc.2d 469 (1970) ; *Zupancic v. City of Cleveland,* 58 Ohio App2d 61, 389 N.E.2d 861 (1978) ; *McGough v. Edmonds,* 1 Wash. App. 164, 460 P.2d 302 (1969) ; *Bradshaw v. Seattle,* 43 Wash.2d 766, 264 P.2d 265 (1953) ; *Barton v. King County,* 18 Wash.2d 573, 139 P.2d 1019 (1943). *See also:* 4 Blashfield, *Automobile Law and Practice,* sec. 163.13, 386 (3d Ed. 1965) ; Annot.,

42 A.L.R.2d 817 (1955); 39 Am. Jur.2d *Highways, Streets, and Bridges,* sec. 462 (1968). *Contra: Mauthe v. Gibson,* 367 So.2d 1280 (La. App. 1979); *Stewart v. Lewis, supra; Jezek v. City of Midland,* 605 S.W.2d 544 (Tex. 1980). Principal reliance is placed upon the *Boyle* decision, in which a minor plaintiff bicyclist, struck by a car at an intersection, claimed his view of cross traffic at the intersection was impaired by vegetation which had grown up in the dedicated right of way adjacent to the traveled portion of the roadway. In affirming a grant of summary judgment in favor of the defendant municipalities, the court stated:

"[2] In order to find the defendant cities liable, the plaintiff must prove the three elements of actionable negligence: 1) a duty owed to the plaintiff, 2) a breach thereof and 3) an injury proximately caused by the breach. *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969). The defendants rightly contend that as a matter of law they owed no duty to the plaintiff." *Boyle v. City of Phoenix, supra* at 107.

Using the *Boyle Case* as authority for the proposition that no duty exists to cut roadside vegetation in order to provide motorists a clear view at intersecting highways, the defendant Pepin County argues that, under the Wisconsin formulation of the elements of a cause of action in negligence, *i.e.,* duty, breach, causation, and damage, the plaintiffs' action is defeated at the threshold for want of a duty to breach. This is the approach taken by the court of appeals which concluded there existed no duty on the municipal defendants to cut intersection vegetation to improve visibility, and "[a]s there is no duty, there can be no liability." *Walker v. Bignell,* 96 Wis.2d at 475.

This court on a number of occasions has discussed the somewhat elusive concept of "duty." In *Ollerman v.*

*O'Rourke Co., Inc.*, 94 Wis.2d 17, 27–28, 288 N.W.2d 95 (1980), quoting from *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 183–84, 77 N.W.2d 397 (1956), this court repeated the words of Dean Prosser:

> " 'There is a duty if the court says there is a duty; the law, like the constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question. When we find a duty, breach, and damage, everything has been said. The word serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none.' " (Emphasis in original.) 94 Wis.2d at 28.

In this case "duty" is used in two respects which should be distinguished before the principal issue can be resolved. It is claimed there is or should be an affirmative duty on Wisconsin municipalities to cut weeds to provide visibility at highway intersections. Duty in this sense refers to an affirmative obligation imposed by law to do a particular thing, to perform a particular act. It is a requirement of specific conduct. Dean Prosser notes that the courts of common law generally have been reluctant to impose obligations of affirmative conduct upon others. Prosser, *Law of Torts*, sec. 56, 338–40 (4th ed. 1971). But this is a negligence suit, and the parties have spoken of duty in a second respect: the defendants' duty of *reasonable care*. Although we have stated that one's duty to exercise reasonable care must be attached to some other conduct, *Fitzgerald v. Ludwig*, 41 Wis.2d 635, 638, 165 N.W.2d 158 (1969), the essence of that duty is not to do, or refrain from doing, a particular act, but rather to act in a particular way—to exercise reasonable care—whenever it is foreseeable that one's conduct may cause harm to another. *Coffey v. Milwaukee*, 74 Wis.2d 526, 536, 247 N.W.2d 132 (1976); *A. E. Investment Corp. v.*

*Link Builders, Inc.,* 62 Wis.2d 479, 483, 214 N.W.2d 764 (1974). Thus within the framework of a negligence case the particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances. *See: Ceplina v. South Milwaukee School Board,* 73 Wis.2d 338, 342, 243 N.W.2d 183 (1976).

There are several ways to determine whether specific conduct in a given instance conforms to what would be expected of a reasonable person. Restatement (Second) *Torts,* sec. 285 (1965), enumerates them as follows:

"Sec. 285. **How Standard of Conduct is Determined.**

"The standard of conduct of a reasonable man may be

"(a) established by a legislative enactment or administrative regulation which so provides, or

"(b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

"(c) established by judicial decision, or

"(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision."

Of these, the most familiar are standards set by safety statutes, violation of which may constitute negligence per se, and the individual factual appraisals ordinarily left to the jury.

At oral argument counsel for the plaintiffs asserted that a duty of reasonable care was owed by the defendant municipalities in the first instance because it was reasonably foreseeable that the county's failure to cut the weeds at intersections may cause harm to users of the highways. We interpret the plaintiffs' argument as seeking from this court a determination that, as a matter of law, a municipality's failure to cut vegetation at an intersection

▇▇▇▇▇▇▇▇

in order to assure a clear view of crossing traffic is conduct which falls below that degree of care which would be exercised by a reasonable person. Assuming the necessary causal relationship were found to exist in this case, such a determination would result in the imposition of liability on the defendant municipalities. It is this bottom line question—whether municipalities should incur liability for injuries sustained because of uncut vegetation at highway intersections—which is critical.

Whether liability should be imposed in a given situation is a question of policy, whether the liability is regulated by the notion of duty, *Klassa v. Milwaukee Gas Light Co., supra; see:* Prosser, *Law of Torts,* sec. 53, 325 (4th ed. 1971), or whether, as our recent cases have stated, liability is cut off after the elements of negligence have been established. *Coffey v. Milwaukee, supra.* In that case we stated that even where the chain of causation between conduct and harm is complete and direct, recovery may be denied on the grounds that:

"(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *Dumer v. St. Michael's Hospital,* 69 Wis.2d 766, 774, 233 N.W.2d 372 (1975); *Rieck v. Medical Protective Co.,* 64 Wis.2d 514, 517, 219 N.W.2d 242 (1974); *Colla, supra,* 598, 599." 74 Wis.2d at 541.

■

We find it unnecessary to ground our decision relative to the defendants' ultimate liability upon the somewhat nebulous concept of duty even though the parties to this

review, the courts below, and many decisions from other jurisdictions have used the term. Our cases do not indicate that municipalities are held to an affirmative duty to cut roadside vegetation in order to assure motorist visibility, and we are disinclined to declare the existence of such a duty. *See, e.g., Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.,* 84 Wis.2d 1, 8, 267 N.W.2d 13 (1978). Neither do we consider whether injury to motorists caused by poor visibility occasioned by uncut vegetation at highway intersections is within the realm of a foreseeable risk of harm so as to trigger in the defendants a duty of reasonable care to prevent such harm. *A. E. Investment Corp. v. Link Builders, Inc., supra; Johnson v. Misericordia Community Hospital,* 99 Wis.2d 708, 301 N.W.2d 156 (1981). Instead we prefer to declare directly that, as a matter of public policy, municipalities should not be exposed to common law liability under the circumstances present in this case. Exposure to such liability would, we feel, place an unreasonable and unmanageable burden upon municipalities such as the defendants herein, not only in terms of keeping areas adjacent to every highway intersection clear of visual obstructions at whatever intervals are necessitated by the vicissitudes of Wisconsin's climate, but also in terms of the potential for significant financial liability owing to the unfortunate propensity of motorists to have intersection accidents. In addition, because the height and density of vegetation would become a factor in nearly every intersection accident case, municipalities would inevitably be drawn into considerably more litigation, with its attendant costs and demands. To require these defendants to do battle with roadside vegetation under penalty of liability for common law negligence would be to place upon them a burden they should not be made to bear.

Because we conclude there should be no common law liability imposed upon the defendant municipalities for

injuries caused by uncut vegetation obscuring motorists' vision at highway intersections, we need not address the issue raised by the plaintiffs whether the weed control program followed by the county and the town amounted to the assumption of a duty which they would have been bound to carry out in a non-negligent manner.

## II.

Having concluded that the municipal defendants should incur no common law liability to injured motorists because of obstructed vision at highway intersections caused by weeds and other uncut vegetation, we turn now to a consideration of whether liability may arise under sec. 80.01(3), Stats. This question was not presented to the courts below, as evidently the plaintiffs were unaware of that section's existence. Although ordinarily this court will not consider issues not raised below, an exception to that general rule exists with respect to questions of law which the court deems sufficiently important to merit a decision. *Wirth v. Ehly,* 93 Wis.2d 433, 444, 287 N.W.2d 140 (1980); *Binder v. Madison,* 72 Wis.2d 613, 618, 241 N.W.2d 613 (1976). In this case our attention to the applicability of sec. 80.01(3) is warranted inasmuch as the general issue of the existence of statutory liability was raised and decided below, and a decision relative to this newly discovered section is necessary to make judicial consideration of the statutory liability question complete.

The plaintiffs contend that sec. 80.01(3), Stats., is a safety statute which imposes upon the defendant municipalities a duty to adequately trim roadside vegetation, the violation of which constitutes negligence per se. The critical language of the statute upon which this contention is grounded is as follows:

"It shall be unlawful for any person to injure any tree or shrub, or cut or trim any vegetation, or make any excavation in any highway laid out after said date or where the right to protect vegetation has been acquired, without the consent of the highway authorities and under their direction but such authorities shall remove, cut or trim or consent to the removing, cutting or removal of any tree, shrub or vegetation in order to provide safety to users of the highway."

We have denominated as safety statutes those legislative enactments which are designed to protect a class of persons from a particular type of harm. For the violation of such a statute to be negligence per se, it must appear that the harm inflicted was the type the statute was designed to prevent and that the person injured was within the class of persons sought to be protected. *Fleury v. Wentorf,* 82 Wis.2d 105, 109–10, 262 N.W.2d 68 (1978); *Weiss v. Holman,* 58 Wis.2d 608, 616–17, 207 N.W.2d 660 (1973); *Meihost v. Meihost,* 29 Wis.2d 537, 540, 139 N.W.2d 116 (1966).

We have no difficulty reaching the conclusion that sec. 80.01(3), Stats., was designed in part for the safety and protection of highway users. The last clause of the statute expressly says so. When we considered the harm sought to be prevented, it must be recognized that the section deals generally with the improvement of certain highway lands by planting vegetation for purposes of erosion protection and beautification. The statutory command that highway authorities "shall remove, cut or trim or consent to the removing, cutting or removal of any tree, shrub or vegetation in order to provide safety to users of the highway" is clearly aimed at preventing such harm as may result to highway users from a failure to cut or trim such vegetation along highways.

In this case the plaintiffs are obviously "users of the highway" within the meaning of the statute. While the

statute is not detailed in terms of the precise kinds of harm it contemplates, we believe that injuries sustained as a result of obstructed vision at intersections because of uncut vegetation are within the scope of those threats to the safety of highway users which the duty to cut or trim was meant to forestall. This conclusion is based in part upon our belief that, had the statute been intended merely to prevent uncut growth from encroaching upon or overhanging the traveled surface, the duty to cut or trim would not have been so broadly stated. Contrast other statutes which are more particular in indicating the purpose for which trimming must be undertaken. Secs. 86.03 and 195.29(6), Stats. Moreover, as a matter of common sense, roadside vegetation need not reach the point where it physically obstructs the traveled portion of the highway before it poses a hazard to the safety of highway users. Finally, to limit the duty to trim vegetation under this section only to such growth as physically impedes travel on the roadway would be redundant in view of a municipality's already existing duty to maintain the traveled portion of its roadways in a reasonably safe condition. *Cable v. Marinette County,* 17 Wis.2d 590, 594, 117 N.W.2d 605 (1962); *Johnson v. Iron River,* 149 Wis. 139, 142, 135 N.W. 522 (1912); sec. 81.15, Stats.

Although sec. 80.01(3), Stats., is characterized as a safety statute the violation of which is negligence per se, we must yet determine whether there is some expression of legislative intent that the section become a basis for the imposition of civil liability. *Wells v. Chicago & North Western Transportation Co.,* 98 Wis.2d 328, 331–40, 296 N.W.2d 559 (1980). The final clause of sec. 80.01(3) was added by Chapter 70, Laws of 1949.[4] That legis-

---

[4] Chapter 70, Laws of 1949, provides:

"AN ACT to amend 80.01(3) and 84.07(1) of the statutes, relating to maintenance of highways.

lation, introduced as No. 121, A, and prepared under a drafting request headed "Subject: 'Highway Ice Treatment and Sanding; Roadside Vegetation, etc.'" initially proposed not only the language we now consider, but also similar language to be incorporated into sec. 84.07(1),

"The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:

"Section 1. 80.01(3) of the statutes is amended to read:

"80.01(3) No lands abutting on any highway, and acquired or held for highway purposes, shall be deemed discontinued for such purpose so long as they abut on any highway. All lands acquired for highway purposes after June 23, 1931 may be used for any purpose that the public authorities in control of such highway shall deem to conduce to the public use and enjoyment thereof. Such authorities may improve such lands by suitable planting, to prevent the erosion of the soil or to beautify the highway. The right to protect and to plant vegetation in any highway laid out prior to said date may be acquired in any manner that lands may be acquired for highway purposes. It shall be unlawful for any person to injure any tree or shrub, or cut or trim any vegetation, or make any excavation in any highway laid out after said date or where the right to protect vegetation has been acquired, without the consent of the highway authorities and under their direction but such authorities shall remove, cut or trim or consent to the removing, cutting or removal of any tree, shrub or vegetation in order to provide safety to users of the highway.

"Section 2. 84.07(1) of the statutes is amended to read:

"84.07(1) the state trunk highway system shall be maintained by the state at state expense. The commission shall prescribe regulations and specifications for such maintenance. The commission may arrange with any county highway committee to have all or certain parts of the work of maintaining the state trunk highways within its county performed by the county. Maintenance of state trunk highways includes the operations, activities and continuing processes for their repair, preservation, restoration and reinforcement, the removal and control of snow and the removal, treatment and sanding of ice, and all measures deemed necessary to provide adequate traffic service. It also includes the care and protection of trees and other roadside vegetation and suitable planting to prevent soil erosion or to beautify highways pursuant to section 80.01(3)."

Stats. 1947.[5] An amendment to the proposed amendment prepared under the subject heading "Highway Maintenance" deleted the proposed amendment to sec. 84.07 (1). While the focus is on maintenance rather than beautification, there does not emerge any discernible legislative intent to impose civil liability under Chapter 70, Laws of 1949. However, we believe the requisite intent may be supplied by necessary implication from the language of the statute. The language added by the 1949 amendment is such a clear expression of concern for the safety of highway users, committed so plainly to the responsibility of the public highway authorities, that we conclude that the municipal bodies so charged are exposed to civil liability for their failure to do that with which they are charged. We conclude, therefore, that, within the limited circumstances discussed below, sec. 80.01(3) created a basis for civil liability in favor of highway users.

Clearly sec. 80.01(3), Stats., does not impose upon municipal authorities a duty to cut vegetation on all highways. As this court has previously stated, that section was enacted as Chapter 295, Laws of 1931, "to prevent land acquired for highway purposes from reverting back to private ownership." *Grunwaldt v. Milwaukee,* 35 Wis.2d 530, 537, 151 N.W.2d 24 (1967). While it has undergone several changes over the years, its basic thrust has remained unchanged. In addition, the statute permits public authorities to make such use of highway lands acquired after June 23, 1931, as may "conduce to the public use and enjoyment thereof," and further provides "[s]uch authorities may improve such lands by suitable planting, to prevent the erosion of the soil or to beautify the highway." With respect to highway lands

[5] No. 121, A, initially proposed to amend sec. 84.07(1), Stats. 1947, by adding the following language to the last sentence: "and the removal, cutting and trimming of such trees, planting and vegetation when necessary to the safety of users of the highway."

which had reverted to private ownership prior to the enactment of this section, the statute then provides that "[t]he right to protect and to plant vegetation in any highway laid out prior to said date may be acquired in any manner that lands may be acquired for highway purposes."

It is apparent from our reading of these provisions that the legislature intended to facilitate highway beautification programs and erosion control programs by (1) permitting certain otherwise discontinued highway lands to remain held by highway authorities; (2) expanding the purposes for which highway lands may be used; (3) directly authorizing the planting of vegetation for beautification and erosion control purposes; and (4) providing for the reacquisition of former highway land which had reverted to private ownership.

Consistent with this overall scheme, the statute then declares it unlawful for any person to cut vegetation or excavate "in any highway laid out after said date or where the right to protect vegetation has been acquired" without permission of the highway authorities, but it then imposes upon the highway authorities the duty, previously discussed, to cut or trim "in order to provide safety to users of the highway."

We conclude that the duty to cut vegetation, and the civil liability which flows from a failure by the highway authorities to do so, arises only in connection with highway lands acquired after June 23, 1931. Although the statute speaks of acquiring the right to plant and protect vegetation in highways laid out previously, the acquisition of that right necessarily involves the reacquisition of discontinued and now reverted lands, which would bring the lands within the general class of lands acquired after June 23, 1931. Moreover, we do not believe that the mere holding of lands for highway purposes, even

though acquired after that date, is sufficient to impose upon highway authorities the duty to cut vegetation. Rather, a duty to cut roadside vegetation arises under this statute where there has been affirmative conduct on the part of the highway authorities to plant vegetation for beautification or erosion control purposes, or where the authorities have evinced a clear manifestation of intent to preserve and protect existing vegetation for those same purposes, on highway lands acquired after June 23, 1931. Where this factual predicate exists, the authorities are under a duty to trim what they have planted or protected to provide safety to users of the highway. It the legislature had intended to place civil liability on municipalities for failure to cut and trim all vegetation rather than limiting civil liability to those circumstances where the municipality has taken affirmative action to beautify or prevent erosion, it would not have limited the treatment to highway lands acquired after June 23, 1931.

The record before us is silent with regard to the date of highway acquisition and the matter of vegetation management, if any. We attribute this to the failure to discover sec. 80.01(3), Stats., by the parties litigant until the case reached this court. Summary judgment should be granted only where it is clear upon the record "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2), Stats. Because of the need for further development of the factual record, we conclude that summary judgment was improperly granted, and we reverse and remand for further proceedings.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.