STATE BANK OF HARTLAND, a Wisconsin banking corporation, Plaintiff-Respondent,

v.

Gerald ARNDT, a/k/a Gerald C. Arndt and Evelyn M. Arndt, Defendants-Appellants. †

Court of Appeals

*No. 84–1683. Submitted on briefs November 11, 1985.—Decided February 20, 1986.*
(Also reported in 385 N.W.2d 219.)

† Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *R. Arthur Ludwig* and *Ludwig & Shlimovitz, S.C.* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Thomas R. Fahl* and *Brendel, Flanagan, Sendik & Fahl, S.C.* of Milwaukee.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J.  Gerald and Evelyn Arndt appeal from a judgment in favor of The State Bank of Hartland foreclosing Arndts' interests in their homestead. Arndts contend that the bank is barred from foreclosing its real estate security interest because (1) the bank breached various duties to them by permitting a financing statement covering their business assets to lapse, (2) foreclosure against Evelyn's interest is precluded by her failure to sign a secured note, and (3) the security agreement did not cover future advances. Arndts also contend that the court allowed unreasonable attorney fees.[1] We reject these contentions and affirm.

The principal facts are undisputed. When Arndts bought a bridal salon business in 1975, the bank lent them $11,000 on a note secured by a general security agreement covering their personal property, including business assets. A financing statement was duly filed

---

[1] Arndts argue that two of the trial court's findings of fact are clearly erroneous. Section 805.17(2), Stats. Arndts marshall evidence to rebut the trial court's finding that the bank did not renew its security interest in Arndts' business assets because it relied on the subsequent real estate security interest. A finding of fact is not set aside merely because some evidence supports a contrary finding. *Cogswell v. Robertshaw Controls Co.,* 87 Wis.2d 243, 249, 274 N.W.2d 647, 650 (1979). Sufficient credible evidence supports this finding so that it must be accepted on appeal. The trial court also found that had the bank filed a continuation statement and thereby kept its security interest in the business assets perfected, the bank's indebtedness would have been partially or wholly satisfied. We accept Arndts' argument that the bank would have been paid in full had it remained a secured creditor. The result on appeal, however, is unchanged.

414

September 15, 1975. The security agreement and financing statement covered present and future debts. The note was paid in full.

In November 1976 Arndts sought an additional loan to pay business debts. The bank insisted on additional security in the form of a real estate security agreement covering their homestead. Both Gerald and Evelyn signed the real estate security agreement November 19, 1976. Additional sums were advanced to Arndts, resulting in a January 2, 1980 note and separate note dated December 20, 1980. Only Gerald signed the January note. Both signed the December note.

Because no continuation statement was filed before September 15, 1980, the effectiveness of the 1975 financing statement covering Arndts' business assets lapsed. A financing statement is effective for five years from the date of filing and lapses on the expiration of that period unless a continuation statement is filed prior to the lapse. Section 409.403(2), Stats. With that lapse, the bank's security interest in Arndts' business assets became unperfected. *Id.*

Arndts filed bankruptcy in 1982. When the bank filed a claim as a secured creditor based on the real estate security agreement, Arndts filed another claim on behalf of the bank as an unsecured creditor based on the unperfected security interest in their business assets. The bankruptcy court treated the bank as an unsecured creditor. The bank's filing was disallowed, but without prejudice to its rights under the real estate security agreement. The bank realized less on the allowed claim than the full amount of the debt. Had the bank preserved its security interest in Arndts' business assets, it would have been paid in full.

The bank then brought this foreclosure action. The trial court granted the foreclosure judgment on the January 2, 1980 and December 20, 1980 notes and ordered sale of the homestead to pay the debt plus the bank's attorney fees. This appeal followed.

## A. BANK'S DUTY TO ARNDTS

The trial court held that the bank owed Arndts no duty to preserve its security interest in Arndts' business assets. Arndts challenge that holding, presenting several arguments.

Whether a duty exists is a question of law. *Anderson v. Green Bay & Western Railroad,* 99 Wis.2d 514, 516, 299 N.W.2d 615, 617 (Ct.App. 1980). We, of course, need not defer to the trial court's conclusion of law. *Midwest Developers v. Goma Corp.,* 121 Wis.2d 632, 651, 360 N.W.2d 554, 564 (Ct.App. 1984).

A duty may be an obligation imposed by law to perform a specific act or an obligation that attaches to other conduct. *Walker v. Bignell,* 100 Wis.2d 256, 263, 301 N.W.2d 447, 452 (1981). The first is a duty to act. The second is a duty to act in a particular way.

### 1. *No Duty to File Continuation Statement*

Nothing in sec. 409.403(2), Stats., on reperfecting a security interest imposes an obligation on a secured creditor to file a continuation statement. Nothing in ch. 409, entitled Uniform Commercial Code—Secured Transactions, or any other statute brought to our attention imposes such an obligation. Nor have Arndts cited a judicial decision which imposes such an obligation on a secured creditor.

## 2. *UCC Collateral Provision Not for Arndts' Benefit*

Section 403.606(1), Stats., provides: "The holder [of an instrument] discharges any party to the instrument to the extent that without such party's consent the holder: . . . (b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Arndts argue that by letting its financing statement lapse, the bank impaired collateral for the notes sued on. They seem to contend that their interests in the homestead cannot be foreclosed because the value of the impaired collateral exceeds the value of the debt.

Whatever Arndts' reasoning, sec. 403.606(1), Stats., is inapplicable. This statute is identical to sec. 3–606(1) of the Uniform Commercial Code. Although the several courts that have faced the issue do not agree, the most recent view is that "any party to the instrument" means a party who is in the position of a surety with a right of recourse and does not refer to the primary obligor. *Federal Deposit Ins. v. Blue Rock Shopping Center,* 766 F.2d 744, 749–51 (3d Cir. 1985). The analysis in that case is based upon the drafter's comment to the UCC provision and is consistent with the view of most courts.[2]

---

[2] One court has cited several cases to support the conclusion that the majority of courts has held that Section 3–606 of the Uniform Commercial Code does not operate to discharge a co-maker of a note. *Fed. Deposit Ins. Corp. v. Blue Rock Shop. Center,* 567 F.Supp. 952, 957 (D.C. Del. 1983), *modified in Federal Deposit Ins. v. Blue Rock Shopping Center,* 766 F.2d 744 (3d Cir. 1985). Who is a "party" discharged under UCC sec. 3–606(1)(b) is the subject of an annotation, 93 ALR3d 1283 (1979).

### 3. *Duty of Good Faith Not Violated*

Arndts contend that the bank violated a duty of good faith. They rely on sec. 401.203, Stats., which provides: "Every contract or duty within chs. 401 to 409 imposes an obligation of good faith in its performance or enforcement."

The duty of good faith does not by itself require a secured creditor to file a continuation statement. Good faith cannot stand alone. The obligation of good faith must attach to some other conduct. *See Walker,* 100 Wis.2d at 263, 301 N.W.2d at 452. Because chs. 401 to 409, Stats., impose no duty upon the bank to file a continuation statement, Arndts have failed to establish statutorily required conduct to which a good faith obligation will attach.

Arndts assert that the security agreement covering their business assets is conduct to which the good faith duty attaches. They argue that the security agreement required the bank to preserve a perfected security interest in their business assets. The trial court made no finding on the point. Whether the agreement required the bank to preserve its security interest is an issue which we may resolve if the document is unambiguous. *Schlosser v. Allis-Chalmers Corp.,* 86 Wis.2d 226, 244, 271 N.W.2d 879, 887 (1978).

The agreement is unambiguous. Nothing in it imposes a duty on the bank to preserve its security in Arndts' business assets. Appellants themselves have not referred us to a specific provision in the agreement.

Before leaving the good faith issue, we note that the trial court made no finding regarding the bank's honesty. Under the Uniform Commercial Code, good

faith is defined as "honesty in fact in the conduct or transaction concerned." Section 401.201(19), Stats. The court found, however, that the bank did not file a continuation statement because it relied on its real estate security. This finding is inconsistent with dishonesty and impliedly rejects dishonesty as a ground for a conclusion that the bank failed to exercise good faith. We may accept the finding as an implicit finding of good faith. *Englewood Apartments Partnership v. Grant & Co.*, 119 Wis.2d 34, 39 n.3, 349 N.W.2d 716, 719 (Ct.App. 1984).

4. *Duty of Diligence, Reasonableness and Care not Violated*

Section 401.102(3), Stats., provides that "the obligations of good faith, diligence, reasonableness and care prescribed by chs. 401 to 409 may not be disclaimed by agreement. . . ." Arndts assert that the bank failed to exercise diligence, reasonableness and care by failing to timely file a continuation statement. We reject the contention.

Like good faith, the duties of diligence, reasonableness and care are within the second class of obligations referred to in *Walker,* 100 Wis.2d at 263, 301 N.W.2d at 452. They attach to other conduct. We find no duty running from a secured creditor to the debtor to preserve a security interest in chs. 401 to 409, Stats., or in the agreement between the parties. Whether the bank exercised diligence, reasonableness and care is not an issue.

5. *Exemption Laws Irrelevant*

Arndts find significance in the rule that the ex-

emption laws are liberally construed in favor of debtors, *Opitz v. Brawley,* 10 Wis.2d 93, 95–96, 102 N.W.2d 117, 119 (1960), and that a mortgagee holding security on nonexempt and exempt properties must first proceed against the nonexempt property. *Anchor Savings & Loan Asso. v. Week,* 62 Wis.2d 169, 175, 213 N.W.2d 737, 739 (1974); *Wisconsin Mortgage & S. Co. v. Kriesel,* 191 Wis. 602, 609, 211 N.W. 795, 797 (1927); *Dunn v. Buckley,* 56 Wis. 190, 192–93, 14 N.W. 67, 68–69 (1882). Neither proposition is in point. We are not called upon to construe or apply a law pertaining to exempt property. The bank holds no present security in nonexempt property.

## B. WIFE'S HOMESTEAD INTEREST SUBJECT TO FORECLOSURE

Evelyn Arndt argues that her homestead interest is not security for the January 2, 1980 note which only her husband signed. She relies on the principle that a mortgage creates no lien unless it secures a debt, *McCourt v. Peppard,* 126 Wis. 326, 331, 105 N.W. 809, 811 (1905). She argues that she is not liable on the January 2, 1980 note, and therefore that her interest in the homestead is not security for that debt. We reject her contention.

In its decision, the trial court concluded that the loans to Arndts were made to them as general partners. That conclusion follows from the formal findings of fact. The court found that at all times material to these transactions, Arndts equally controlled their business, Evelyn tending to its daily operations and

Gerald keeping the books and looking after financial matters, including borrowing from the bank. Consequently, Evelyn's failure to sign the January 2, 1980 note is immaterial. She is bound as a partner.

*In Capocasa v. First Nat. Bank,* 36 Wis.2d 714, 154 N.W.2d 271 (1967), the court held that where spouses gave a mortgage on their homestead, later separated, and the husband then gave his note to the bank without the wife's knowledge, her homestead interest was not subject to the lien generated by the second note. *Capocasa* does not relieve Evelyn's homestead interest from the lien generated by the note signed only by her husband. Arndts were partners and the note was a partnership obligation.

## C. FUTURE ADVANCES COVERED

■ Arndts contend that the real estate security agreement did not cover future advances. Because the January and December 1980 notes were given after they signed the real estate security agreement, Arndts contend both notes are unsecured. We disagree. The real estate security agreement states that Arndts entered it to induce the bank "to extend credit in or at any manner, time or amount directly or indirectly to or for the benefit of" Arndts. It gives the bank "a continuing lien on the Property to secure all their present and future debts, obligations, interest and liabilities of whatever nature . . . to Bank."

"Wisconsin has long recognized that a mortgage can secure future advances and the lien of the mortgage will attach at the time of the mortgage even though the advances are made at a later date." *Capo-*

*casa,* 36 Wis.2d at 719, 154 N.W.2d at 274. The trial court's conclusion that the real estate security agreement attached to subsequent notes is consistent only with an implied factual finding that the agreement was intended to cover future as well as past advances. We may imply this finding from the findings actually made. *Englewood,* 119 Wis.2d at 39 n.3, 349 N.W.2d at 719. That implied finding rejects Arndts' testimony to the contrary. Credibility is for the trial court to determine. *Village of Big Bend v. Anderson,* 103 Wis.2d 403, 410, 308 N.W.2d 887, 891 (Ct.App. 1981). The trial court's finding of fact is not clearly erroneous and we must therefore accept it. Section 805.17(2), Stats.

## D. REASONABLE ATTORNEY FEES

In the real estate security agreement, Arndts agreed to pay all reasonable attorney's fees incurred by the bank in enforcing the agreement. The provision is not contrary to law or equity and permits an award for attorney fees in foreclosure actions. *Fellenz v. Gonring,* 113 Wis.2d 228, 231, 335 N.W.2d 884, 885 (Ct.App. 1983).

At the close of the trial, the bank's attorney proposed submitting an itemized statement of his bill to the court and Arndts. Arndts did not object to this approach. In their post-trial brief Arndts complained about the fees' reasonableness. The trial court concluded from a review of the court file that the fees were reasonable and allowed them in their entirety. The fees amount to $5,818.96. The judgment is for $13,607.67.

The trial court's determination of the reasonable value of attorney fees will be sustained unless there is

an abuse of discretion.[3] *Standard Theatres v. Transportation Dept.,* 118 Wis.2d 730, 747, 349 N.W.2d 661, 671 (1984). Here, however, neither the itemized bills nor the counsels' post-trial briefs discussing the bills are in the record. The record contains no other evidence on the nature and extent of the attorney's services and their value. We cannot review the trial court's exercise of its discretion.

The award is large given the amount of the judgment, but the burden is on Arndts to provide an appellate record to review the issues they raised on appeal. *J.F. Ahern Co. v. Building Commission,* 114 Wis.2d 69, 85, 336 N.W.2d 679, 687 (Ct.App. 1983). Given an incomplete record, we will assume that it supports every fact essential to sustain the trial court's exercise of discretion. *Austin v. Ford Motor Co.,* 86 Wis.2d 628, 641, 273 N.W.2d 233, 239 (1979). The award is affirmed.

*By the Court.*—Judgment affirmed.

---

[3] Under an alternate approach, once facts are determined, reasonableness is a question of law. *Wassenaar v. Panos,* 111 Wis.2d 518, 525, 331 N.W.2d 357, 361 (1983). Under that approach, the trial court's determination is given weight. *Id.* We would reach the same result on the facts before us under either approach.