908 F.2d 119
 59 USLW 2068
 Judith JUSTICE, as Administratrix of the Estate of Hal
Edward Justice, Deceased, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INCORPORATED, and National Railroad
Passenger Corporation, also known as Amtrak,
Defendants-Appellants,
and
Jasper County Farm Bureau Cooperative Association, Inc.,
Defendant-Appellee.
 Nos. 89-2360, 89-2426.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 15, 1990.
Decided July 10, 1990.
Rehearing and Rehearing En Banc Denied Aug. 21, 1990.
 
 Robert D. Brown, Jay A. Charon, Spangler, Jennings & Dougherty, Merrillville, Ind., Terrance M. Rubino, Rubino & Padula, Munster, Ind., for plaintiff-appellant.
 R. Kent Rowe, Martin J. Gardner, Edmond W. Foley, Rowe, Foley & Huelat, South Bend, Ind., for defendant-appellee.
 John C. Duffey, Stuart & Branigin, Lafayette, Ind., for defendant-appellant.
 Before POSNER and KANNE, Circuit Judges, and SNEED, Senior Circuit Judge.*
 POSNER, Circuit Judge.
 The widow of a man killed at a railroad crossing in Indiana appeals from a judgment in favor of defendant Jasper County Farm Bureau entered on the farm bureau's motion for summary judgment. The basis of federal jurisdiction is diversity of citizenship, and the parties agree that Indiana law governs the substantive issues. There were two other defendants in the district court (CSX and Amtrak), and although they settled with the estate they, too, are attempting to appeal from the judgment in favor of the Farm Bureau. We shall have to decide whether we have jurisdiction of their appeal before we can reach the merits of that appeal. But we begin with Mrs. Justice's appeal.
 The scene of the accident is shown in the photograph at the end of this opinion. A county road, horizontal in the picture, crosses a pair of tracks, vertical in the picture. The track on the left as you face the picture is a main line owned and maintained by defendant CSX (the old Chesapeake & Ohio). A few feet to the right of the main line is a spur servicing the large building to its right, a fertilizer plant owned by the farm bureau. At each end of the crossing is the standard flashing-light railroad warning signal, but there are no gates. On a winter afternoon in 1987, Hal Justice, a truck driver who had just delivered a load of grain to another building in the farm bureau's complex, was driving west (left) on the county road toward the crossing. The farm bureau had placed several railroad cars on the spur within fifty feet of the crossing, and the combination of the plant and the cars blocked the view of the main line to anyone approaching the crossing from the east (right), as Justice was. The lights of the warning signal were flashing as he approached, however, and he stopped; but not seeing a train on the main track, he proceeded forward (slowly, according to eyewitnesses) across the tracks. As he entered the main track, his truck was struck by a train operated by Amtrak, the third defendant, traveling south at high speed. Justice died without regaining consciousness.
 The theory of the estate's action against the farm bureau is that the bureau had a duty not to obstruct the view of persons using the county road. The district judge held that there was no such duty, and, the bureau adds on appeal, in any event the obstruction was not the "proximate cause" of the accident--Justice's action in crossing the track in the face of the flashing warning signal was. The bureau does not argue, however, that Justice's contributory negligence is a bar to this suit. Under Indiana's comparative negligence statute, the victim's negligence is a bar only if he was more than 50 percent at fault, Ind.Code Sec. 34-4-33-4, and the bureau does not argue that this determination can be made on the record that was before the district judge in this summary judgment proceeding. Another consideration is that the fault of all tortfeasors must be considered in determining whether the plaintiff was more than 50 percent at fault, Sec. 34-4-33-4(b), and there were three alleged tortfeasors here, the farm bureau and the two railroads. The district judge, moreover, did not address the issue of comparative negligence.
 The principal issue before us therefore is the tort duty of a land occupier to persons using an adjacent public way. The farm bureau concedes as it must that if it obstructs the way physically, it is liable to a user injured as a result of the obstruction. Prosser and Keeton on the Law of Torts 388 (5th ed. 1984). But it denies that it is liable for merely obstructing the line of sight across its own land. It even concedes liability to users of the public way for indirect physical obstruction, as where the owner of a commercial property, by negligent design of the entrance to the public way from his property, precipitates an accident between an employee or customer and a third party, and the third party sues the owner. Holiday Rambler Corp. v. Gessinger, 541 N.E.2d 559 (Ind.App.1989), was such a case, and held that the landowner had a duty of care. Id. at 562. As the farm bureau points out, however, in such a case the employee or customer may be regarded as a physical projection or emanation from the property, much as if the owner had dumped his garbage in the public way. There is no physical intrusion into the public way when the property owner merely blocks a view across his property, so if Justice's contention were accepted it could mean that tort law imposes height and set-back restrictions on private buildings located at intersections, as the bureau's fertilizer plant is. Since the American common law has rejected the English doctrine of "ancient lights," there is no duty to avoid building on your property in such a way as to cut off a neighbor's access to natural light. Wolf v. Forcum, 130 Ind.App. 10, 16, 161 N.E.2d 175, 178 (1959); Mohr v. Midas Realty Co., 431 N.W.2d 380, 382 (Ia.1988); Infinity Broadcasting Corp. v. Prudential Ins. Co., 869 F.2d 1073, 1076-77 (7th Cir.1989). (We have found only one exception, and that a limited one: a decision in Wisconsin involving blockage of sunlight needed for a solar heater. Prah v. Maretti, 108 Wis. 2d 223, 321 N.W.2d 182 (1982).) It has been thought to follow that there is no duty to avoid blocking someone's view, scenic or otherwise. Wolf v. Forcum, supra, 130 Ind.App. at 16, 161 N.E.2d at 178; Scharlack v. Gulf Oil Corp., 368 S.W.2d 705 (Tex.Civ.App.1963).
 It is true that, having just made a delivery to the farm bureau, Justice was a business invitee, and let us assume that this status persisted to the time and place of the accident. Still, a business invitee is not entitled to a higher standard of care than a stranger. The point of the classification, rather, is that invitees are entitled to the same standard of care as strangers, and hence to a higher standard than social guests, (other) licensees, and trespassers. Blake v. Dunn Farms, Inc., 274 Ind. 560, 567, 413 N.E.2d 560, 564 (1980); Martin v. Shea, 463 N.E.2d 1092 (Ind.1984); Hutchins v. Norfolk & Western Ry., 890 F.2d 978, 980 (7th Cir.1989) (applying Indiana law). The farm bureau argues not that Justice had no greater entitlement than a licensee, but that it has no duty to avoid obstructing the view across its own land for anyone.
 The question whether a landowner has a tort duty to prevent visual obstructions on his property to the user of a public way is one of Indiana common law. Unfortunately there are no Indiana cases on point, the analogous Indiana cases that the parties cite are all over the lot, and the case law elsewhere is sparse and divided. Mrs. Justice relies heavily on Pitcairn v. Whiteside, 109 Ind.App. 693, 34 N.E.2d 943 (1941). A railroad was held liable for an emission of smoke that obscured the vision of a driver on the highway, who as a result collided with the plaintiff. Pitcairn is distinguishable from the present case. There the obstruction was in the public way itself (more precisely, in the space above the public way--but that was public property too) rather than, as here, confined to the defendant's property. State v. Flanigan, 489 N.E.2d 1216 (Ind.App.1986), on which the farm bureau relies, is also distinguishable. There was no obstruction. The plaintiffs were injured while walking along the highway, where they had parked their car, to the defendants' market. The court held that the defendants had no duty enforceable by tort law to provide adequate parking. There was obstruction but no liability in Blake v. Dunn Farms, Inc., supra, and dictum adverse to Mrs. Justice; yet Blake says, "we agree with the decision in Pitcairn." 413 N.E.2d at 564. In Blake a horse had escaped from land owned by the defendant, and the plaintiff had collided with the horse on a public highway that crossed the defendant's land, and had been injured. But the horse was owned by a subtenant of the defendant rather than by the defendant itself, and the defendant was not at fault in the horse's escape--indeed it had no reason to think there were any animals on the property. Holiday Rambler, already cited, is like Pitcairn, while Snyder Elevators, Inc. v. Baker, 529 N.E.2d 855 (Ind.App.1988), is like Flanigan; again Pitcairn is cited with approval. Id. at 858. An intermediate appellate case from another jurisdiction, Boudreaux v. Sonic Industries, Inc., 729 P.2d 514 (Okla.App.1986), provides solid support for Mrs. Justice, but there was a powerful dissent, id. at 518-23; and Walker v. Bignell, 100 Wis.2d 256, 260-67, 301 N.W.2d 447, 451-54 (1981), holds to the contrary. Walker, however, was a case of failing to cut down vegetation, and courts traditionally deny liability for physical harm to persons outside the land caused by natural conditions on the land. Restatement (Second) of Torts, Sec. 363(1). So it is unclear how the Wisconsin court would decide this case--which anyway is not a Wisconsin case.
 Since the precedents are not decisive, we turn to principles. The most fundamental of these is that, with the exception just stated, a person may not use his land in such a way as unreasonably to injure the interests of persons not on his land--including owners of adjacent lands, of course, but also other landowners and the users of public ways. Ft. Wayne Cooperage Co. v. Page, 170 Ind. 585, 589, 84 N.E. 145, 146 (1908); Pitcairn v. Whiteside, supra, 109 Ind.App. at 701, 34 N.E.2d at 946; Prosser and Keeton on the Law of Torts, supra, at 386. This principle undergirds the law of nuisance, the doctrine of Rylands v. Fletcher, the blasting cases, much of trespass law, the landowner's liability to persons injured off the land as a result of artificial as distinct from natural conditions on the land (Restatement, supra, Sec. 364), and the acknowledged duty of a landowner to avoid not only physically obstructing the public way but also (as in Holiday Rambler ) creating a situation in which the owner's customers or employees obstruct it. Most of the cases that instantiate the principle involve a physical interference with the plaintiff, but not all. A funeral home placed in a residential community can be an actionable nuisance, Reiser v. Osborn, 114 Ind.App. 617, 53 N.E.2d 545 (1944); Travis v. Moore, 377 So.2d 609 (Miss.1979), although it does not emit particles or rays that strike the neighbors. The present case could be regarded as stronger for liability, because there is a physical obstruction: the fertilizer plant and the cars on the spur physically obstructed Mr. Justice's sight. Dense clouds of smoke could, we assume (we have found no cases), be deemed a nuisance because of their unsightliness, even if the clouds did not waft across the property lines of the person or firm that had generated them. Neither the hypothetical case we have just put nor the present case is within the exception for natural conditions on the land that cause injury to persons off it.
 There is no satisfactory theoretical basis for drawing a sharp line between land uses that send material entities across the property line and other land uses that harm persons not on the land. But maybe there are practical grounds. If a resident of South Bend, Indiana is deeply offended to learn that hard-core pornography is openly sold by a "sex store" in Las Vegas, has he a cause of action in nuisance? A rule that no land use that does not physically spill over the land's boundaries is actionable in tort would scotch this absurd suggestion. But the rule would go too far. Forget the funeral home cases; the rule would impair the usability of a neighbor's land. The neighbor in this case is Jasper County, which owns the road on which Justice was killed. The road happens to cross a pair of railroad tracks. If the view of the tracks is blocked to westbound drivers, the safety and hence value of the road are diminished. A cautious driver will stop at a railroad crossing even when the warning lights are not flashing; school buses are required by state law to make a full stop at all railroad crossings. Ind.Code Sec. 9-4-1-108. To stop at a crossing with an obstructed view, however, can be worse than useless. The driver has to get out and peek around the obstruction, and by the time he has gotten back into his vehicle and started up again, a train may be bearing down. This is the fallacy in Justice Holmes's "stop, look, and listen" rule, Baltimore & Ohio R.R. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167 (1927), overruled in Pokora v. Wabash Ry., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149 (1934) (Cardozo, J.). The farm bureau was interfering with the use of a neighbor's land, the county's; the estate of Justice sues in effect as the county's surrogate.
 All this is not to suggest that people who own land at intersections must raze their buildings and level the land down to the surface of the intersecting rights of way, or that it is a tort to interfere with a neighbor's view of a lovely prospect from your land. The law requires a reasonable accommodation of competing land uses, rather than the surrender of one user to another; the basis of liability is negligence, not strict liability. We do not understand Mrs. Justice to be arguing that the farm bureau should have moved the fertilizer plant. But the location of the plant made the bureau's action in leaving cars on its siding within fifty feet of the crossing all the more dangerous; it completed the obstruction of the driver's view of the main line. There is no argument that it would have been costly to the farm bureau to have left the cars elsewhere on the siding, where they would not have interfered with that view; as a matter of fact the bureau's contract with CSX required the bureau to keep the cars farther from the crossing. (But we agree with the district judge that Mr. Justice was not a third-party beneficiary of the contract.)
 We hold--predicting as best we can how the Indiana Supreme Court would rule if this case were presented to it--that a landowner's duty of care extends to avoiding the creation of visual obstacles that unreasonably imperil the users of adjacent public ways, even if the obstacle is wholly on his land and merely blocks the view across it. This holding requires that we remand this case, because the farm bureau's alternative ground--that Justice's recklessness in disregarding the warning signal, rather than its own negligence in unjustifiably obstructing Justice's view of the main track, was the proximate cause of the accident--is untenable. It is, indeed, a transparent effort to circumvent Indiana's comparative negligence statute, by relabeling contributory negligence as proximate cause and thereby using a victim's negligence to eliminate his cause of action rather than merely to reduce the size of the damages award to which he is entitled. One can imagine cases in which the victim's negligence would be the proximate cause of an accident, but these would be cases in which either the injurer was not negligent or the accident would not have been averted by the injurer's taking care. Suppose Mr. Justice had heard the whistle of the approaching Amtrak train, and from the pitch and volume estimated accurately the train's speed and location; but he entered the crossing anyway, because he thought he could beat the train. Then his own conduct rather than the obstruction of the view would have been the proximate cause of the accident, because the accident would have taken place even if the farm bureau had not created the obstruction; and, with immaterial exceptions, an event that is not a but-for cause does not give rise to liability. Bastian v. Petren Resources Corp., 892 F.2d 680, 686 (7th Cir.1990). That is not this case. So far as appears from the limited record, had it not been for the obstruction Justice would have seen the train and waited for it to pass before he tried to cross the tracks.
 
 
 1
 There is no doubt that Justice was negligent. The estate points out that he may have assumed that the cars on the siding were causing the signal to flash; this assumption could have been bolstered by the fact that he had just crossed the tracks 740 feet to the north (on the road at the top of the photo) and the lights at that crossing had not been flashing. Nevertheless it is difficult to imagine a more dangerous maneuver than ignoring flashing lights at a railroad crossing at which one's view of the track is completely blocked. It is much more dangerous than running a red light, not only because a train is so much heavier and therefore more dangerous than a car or a truck but also because a red light is not a signal that a vehicle is approaching, just that it may be. We cannot say, however--the facts (especially concerning the care or lack thereof of the other defendants, the two railroads) not having been developed, or the point even argued--that Justice was more than 50 percent at fault in the accident. But it is at least clear that his carelessness was not the sole proximate cause of the accident, for he stopped at the crossing and would not have proceeded had he been able to see the onrushing train.
 
 
 2
 It remains to consider the railroads' appeal. Since they have settled with the plaintiff, their continued presence in the case may seem a mystery, and the mystery is deepened when one realizes that under Indiana law they are not entitled to seek contribution from any joint tortfeasor. Ind.Code Sec. 34-4-33-7. They have a track agreement with the farm bureau, however, which they claim entitles them to indemnity, provided the bureau was at fault in the accident. Since on Mrs. Justice's appeal we have reversed the district court's judgment exonerating the bureau, the other defendants' aim has been satisfied, and we could simply dismiss their appeal as moot. But for future reference (perhaps in this case, for the farm bureau may eventually prevail on remand), we think it worthwhile noting another reason why we lack jurisdiction.
 
 
 3
 The railroads were brought into this case by the plaintiff, and could have filed a cross-claim under Fed.R.Civ.P. 14(a) against the bureau, seeking indemnification in the event that they were forced or agreed to pay the whole or any part of the plaintiff's claim; and then their presence in the case would have survived their settlement with the plaintiff. But they did not file a cross-claim. Their only status in the case was as defendants. When they settled with the plaintiff they resolved the only contest in which they were involved.
 
 
 4
 The motive for the appeal is plain enough. The railroads feared that but for their forensic efforts we might affirm the district court, in which event the farm bureau might plead the finding of no liability as a bar to the railroads' effort to obtain indemnification from the bureau in a subsequent suit. This of course is a possibility. Although a finding that could not have been appealed will often be denied collateral estoppel effect, Alliance to End Repression v. City of Chicago, 820 F.2d 873, 875 (7th Cir.1987), the district court's finding of no liability could be and was appealed--only not by the parties (the railroads) against whom the finding was likely to be used as a bar. Yet they were parties to the suit, though the settlement deprived them of a right to appeal. The plaintiff had every incentive to try to upset the finding, and perhaps that was protection enough to the railroads. They could always file an amicus brief (with our permission, but that would not be hard to obtain), and as a practical matter that would have much the same significance as filing an appeal brief. In an appellate court, as distinct from a trial court, the difference between participation as a party and as an amicus is often nominal--unless the party waives some good issues, for an amicus could not unwaive them.
 
 
 5
 There is as yet no finding of no liability to operate as a bar in any event, making the collateral estoppel effect of such a finding academic, or at least premature. But whatever that effect may be--a controversial issue well discussed in 18 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 4450 (1981)--a party cannot appeal from a judgment after it has settled with the only party that had filed a claim against it or against which it had filed a claim. A party cannot appeal from a judgment entered in favor of a nonadverse party, Morrison-Knudsen Co. v. CHG International, Inc., 811 F.2d 1209, 1214 (9th Cir.1987); United States v. Western Electric Co., 797 F.2d 1082, 1092 (D.C.Cir.1986); Bryant v. Technical Research Co., 654 F.2d 1337, 1343 (9th Cir.1981), and having failed to file a cross-claim against the farm bureau the railroads were not adversaries of the bureau and could not appeal from the judgment in its favor. These are large, experienced, and legally sophisticated enterprises, and it is time they learned to play by the rules. More than a technical point is at stake; the other parties were entitled to assume that the settlement had removed the railroads from any further proceedings in the case.
 
 
 6
 We dismiss the railroads' appeal, reverse the judgment of the district court, and remand the case for further proceedings consistent with this opinion. Costs to the plaintiff; the other parties shall bear their own costs.
 
 
 7
 SO ORDERED.
 
 APPENDIX
 
 8
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 *
 Hon. Joseph T. Sneed, of the Ninth Circuit, sitting by designation