Ruth SANEM and Clarence Sanem, Plaintiffs-Appellants,†

v.

The HOME INSURANCE COMPANY, a foreign insurance corporation, and Ozaukee County, Defendants-Respondents.

Court of Appeals

*No. 82–1262. Submitted on briefs February 24, 1983.—*
*Decided March 25, 1983.*
(Also reported in 332 N.W.2d 857.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiffs-appellants the cause was submitted on the brief of *Kevin M. O'Donnell* of *O'Donnell, Welcenbach & Widmann* of Milwaukee.

For the defendants-respondents the cause was submitted on the brief of *Craig W. Nelson* of *Piette, Knoll & Nelson, S.C.* of Milwaukee.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.    Ruth and Clarence Sanem appeal from a dismissal of their complaint against Ozaukee county. The dispositive issue is whether an allegation that the county was negligent in depositing snow on a median strip so as to diminish driver visibility states a cause of action. We agree with the trial court's conclusion that it does not and affirm.

In 1979, Ruth Sanem was involved in an automobile accident. While traveling east on Highway 84, her car was allegedly struck by another as she attempted to cross Highway 57 in Ozaukee county. Her complaint alleges that a steep deposit of snow and ice on the median strip of Highway 57 obstructed her vision so that she could not see the oncoming traffic. The complaint concludes that the county was negligent because it failed to use reasonable care in choosing where to dump snow cleared from the highway.

The trial court granted the county's motion to dismiss the complaint. The court said that to impose upon

municipalities the duty to clear the area contiguous to plowed roads "could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an inadequate partial program." The court also relied on *Walker v. Bignell,* 100 Wis. 2d 256, 301 N.W.2d 447 (1981), a case where our supreme court decided that municipalities were not subject to common-law negligence liability for failing to keep brush trimmed at highway intersections. We find the trial court's analysis sound and expand on it.

In *Walker,* the plaintiffs were injured in a two-car collision at an intersection. In addition to suing the other driver, the plaintiffs also sued Pepin county, alleging that the areas adjacent to the intersection were so overgrown with weeds that the view of approaching drivers was obstructed. The plaintiffs argued that the county was negligent in failing to keep the area free from visual obstructions. The plaintiffs' argument focused on whether the county owed them a duty of reasonable care, *i.e.,* whether, because it was reasonably foreseeable that the county's failure to cut weeds at intersections may cause harm to travelers, the county was obliged to cut the vegetation.

The supreme court refused to ground its decision on "the somewhat nebulous concept of duty." *Walker,* 100 Wis. 2d at 265, 301 N.W.2d at 453. Rather than determining whether the elements of negligence (duty, breach, causation and damage) could have been shown, the court said the critical question was "whether municipalities *should* incur liability for injuries sustained because of uncut vegetation at highway intersections." (Emphasis added.) *Id.* The court said that whether liability *should* be imposed in a given situation is a question of policy and that the factors to be considered include whether:

(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retro-

spect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Id.*

Considering these factors, the court concluded that as a matter of public policy, municipalities should not be exposed to liability under the facts present in the case. *Walker,* 100 Wis.2d at 266, 301 N.W.2d at 453. The court said that exposure to such liability would place an unreasonable burden upon municipalities to clear areas adjacent to intersections. Also, permitting liability to attach would create "the potential for significant financial liability owing to the unfortunate propensity of motorists to have intersection accidents." *Id.* Finally, the court rejected placing common-law liability on municipalities "because the height and density of vegetation would become a factor in nearly every intersection accident case [and as a consequence] municipalities would inevitably be drawn into considerably more litigation, with its attendant costs and demands." *Id.* [1]

This case parallels the *Walker* decision. Here, the Sanems argue that because Ozaukee county contracted to remove snow and ice from the state's highways, it was

---

[1] The supreme court, while finding no common-law liability to injured motorists because of obstructed vision due to weeds and other uncut vegetation, still found possible statutory liability in that case. Section 80.01(3), Stats., the court stated, was designed in part for the safety and protection of highway users. The statute deals specifically with uncut vegetation, however, and is of no concern in a snow removal case. The Sanems do not pretend that this statute, or any other statute for that matter, creates statutory liability. We have researched the statutes independently and have found none either.

required to discharge its obligation with the same duty imposed on others—that of ordinary care. We decline to delve into whether the elements of negligence could have been shown at trial. Consideration of relevant policy concerns requires us to hold that the county should not incur liability.

First, if liability were to attach, we fear that the height and origin of roadway snowbanks could become a factor in nearly every winter intersection accident case. As a consequence, the governmental units would inevitably be drawn into considerably more litigation, with its attendant costs and demands. Second, because the municipality would be subject to negligence liability, it might likely endeavor to clear all intersection medians of snow accumulations. This would impose a burden almost impossible to fulfill. As the trial court concluded, the high cost of such an undertaking might make the expense of snow removal prohibitive, resulting in no program or an inadequate partial program. Finally, a ruling that a cause of action is stated here may actually decrease the safety of Wisconsin roadways, for the road crews may become preoccupied with the secondary function—increasing intersection visability, to the detriment of their primary function—clearing ice and snow from the road surface. *See* footnote 2.

The Sanems attempt to distinguish *Walker* from this case. They argue that natural snow accumulation is not unlike natural vegetation. Therefore, the duty to remove and obstruction to vision resulting from natural snow accumulation is no more chargeable to the municipality than is the *Walker* situation involving the obstruction of vision due to natural vegetation. They state, however, that their essential contention is not, as the trial court concluded, that the county was negligent in failing to remove the natural accumulation of snow in areas contiguous to the highway but that the negligent act was the decision to dump huge mounds of snow in the median

strip adjoining the intersection. They conclude that the active effort in placing a man-made hill in an intersection is different from the passive undertaking of not moving a hill made of natural snow accumulation. *Walker,* they claim, is limited to the latter situation.

The fallacy of the attempted distinction is that snow must be removed from the highways. Any snow removal operation necessarily results in the deposit of snow somewhere. Intersections are not immune from highway snow removal, and deposits will occur at or near the intersection. Whether the snow be placed in the median or at the corners of the intersection, it can well obstruct the view of some drivers. To impose upon a municipality the duty to remove the snow completely from the intersection area would substantially increase the cost of snow removal. Further, if the county were to elect not to remove the snow and ice from the area, it would risk becoming involved in continuous litigation.[2] Finally, if the county were to transport all snow and ice removed from an intersection to a place some distance away, the highways might become more dangerous because the road crews would not be devoting all their energies to clearing hazardous matter from the road surface in as short a time as possible.[3] In light of these concerns, we conclude that there should be no common-law liability upon the defendant county for its failure to insure that highway medians are free from snow and ice obstructions.

---

[2] Section 81.15, Stats., states that no action may be maintained to recover damages against a municipality for injuries sustained by reason of snow or ice accumulation unless it has existed for three weeks. Election by the municipality not to provide snow removal would take away the three-week shield.

[3] If road surfaces remained snow packed and icy for a longer period of time, transportation would be snarled having both short-range and long-range impact on our state and personal economy.

The Sanems also argue that the county is liable because it knew the intersection has historically been a dangerous one. They contend the county had a duty to notify the state and request it make improvements. This argument has no merit. The state department of transportation receives, as a matter of course, reports of traffic accidents. *See* sec. 346.70 (4) (a), Stats.[4] Further, on the basis of the information, the department is required to tabulate and publish statistical information on the number and circumstances of traffic accidents. Sec. 346.70 (3m) (b).[5] Therefore, the state already has adequate information concerning the condition of its highways.

*By the Court.*—Judgment affirmed.

---

[4] Section 346.70 (4) (a), Stats., states in pertinent part:

(4) POLICE AND TRAFFIC AGENCIES TO REPORT. (a) Every law enforcement agency investigating or receiving a report of a traffic accident as described in sub. (1) shall forward a report of the accident to the department within 10 days after the date of the accident.

[5] Section 346.70 (3m) (b), Stats., states:

(3m) DUTY OF DEPARTMENT WITH RESPECT TO AC-CIDENT REPORTS. . . .

(b) The department shall tabulate and may analyze all accident reports and shall publish annually or at more frequent intervals statistical information based thereon as to the number and circumstances of traffic accidents.