Ruth SANEM and Clarence Sanem,
Plaintiffs-Appellants-Petitioners,

v.

The HOME INSURANCE COMPANY,
a foreign insurance corporation, and Ozaukee County,
Defendants-Respondents.

Supreme Court

*No. 82–1262. Argued March 26, 1984.—Decided June 27, 1984.*

(Also reported in 350 N.W.2d 89.)

For the plaintiffs-appellants-petitioners there was a brief by *Kevin M. O'Donnell* and *O'Donnell, Welcenbach & Widman,* Milwaukee, and oral argument by *Kevin M. O'Donnell.*

For the defendants-respondents there was a brief by *Craig W. Nelson* and *Piette, Knoll & Nelson, S.C.,* Milwaukee, and oral argument by *Craig W. Nelson.*

Amicus curiae brief was filed by *Mark Hazelbaker,* Madison, for Wisconsin Counties Association.

Amicus curiae brief was filed by *Burt P. Natkins* and *Le Roy A. Lokken,* Madison, for the League of Wisconsin Municipalities.

LOUIS J. CECI, J.   This is a review of a court of appeals decision[1] which affirmed an order entered by

---

[1] *Sanem v. Home Ins. Co.,* 112 Wis. 2d 389, 332 N.W.2d 857 (Ct. App. 1983).

the circuit court for Ozaukee county, the Honorable Warren A. Grady, Circuit Court Judge, dismissing petitioner Sanems' complaint against respondents Ozaukee county and The Home Insurance Company, pursuant to respondents' motion brought under sec. 802.06(2)(f), Stats., for failure to state a claim upon which relief can be granted.

Because this review is based upon an order granting the respondents' motion to dismiss for failure to state a claim upon which relief can be granted, the only facts before this court are those pleaded in the complaint. This action was commenced by Ruth and Clarence Sanem for personal injuries sustained by Ruth Sanem in an automobile accident on February 14, 1979, at the intersection of state highways 84 and 57 in Ozaukee county. Ruth Sanem was traveling eastbound on highway 84 near the intersection where she stopped her car before actually entering the intersection. She was able to drive across the southbound lanes of highway 57, but stopped again before continuing across the northbound lanes of highway 57. When she continued across the remaining lanes, her car was struck by a northbound vehicle. The Sanems alleged in their amended complaint that Ruth Sanem was unable to observe any northbound traffic on highway 57 because of Ozaukee county's negligence in three respects. These allegations of negligence consisted of (1) knowingly allowing an extremely dangerous intersection to exist without notifying the appropriate authorities so that action could be taken to reduce the dangerousness of this intersection, (2) negligently discharging its duty to remove snow and ice from the intersection by piling large mounds of snow onto the southern median strip, thereby interfering with Ruth Sanem's vision, and (3) negligently maintaining the intersection by failing to remove ice and snow from the median, which blocked the vision of drivers utilizing highways 84

and 57. On the date of the accident, the county was insured by The Home Insurance Company.

The respondents subsequently brought a motion to dismiss the Sanems' complaint, arguing that the county had no duty to take any affirmative action regarding the intersection and that it had no duty to remove snow from the median strip of a highway adjacent to an intersection in order to improve driver visibility. The circuit court granted the respondents' motion, finding no common law or statutory authority to support Sanems' argument that the county had any affirmative duty to notify the department of transportation or any state highway department of the allegedly dangerous nature of the intersection. The court also found that imposing liability upon the county for failure to remove snow from median strips near intersections would be contrary to public policy, citing *Walker v. Bignell*, 100 Wis. 2d 256, 301 N.W.2d 447 (1981). The court stated the responsibility of removing such mounds from intersections would be a virtually impossible one for the county to fulfill and that the costs of such an undertaking may well result in an "inadequate partial program" as far as the county's removal of snow from the traveled portions of the roadways.

The Sanems subsequently appealed to the court of appeals, arguing that the trial court erred in dismissing their complaint, based upon the premise that the county had no legal duty of reasonable care in choosing where to deposit snow and ice it had removed from adjacent highways and, thus, could not be held liable for its negligence. The court of appeals affirmed the trial court in *Sanem v. Home Ins. Co.*, 112 Wis. 2d 389, holding that relevant policy concerns required that there should be no common law liability upon the county for its failure to insure that highway medians are free from snow and ice ob-

structions. We agree with the decision reached by the court of appeals.

We are concerned with one issue in this review. It is whether the respondent county should be liable under principles of common law negligence for its failure to remove snow mounds from median strips adjacent to highway intersections.

The Sanems have argued that Ozaukee county has a common law duty to remove snow from highways in a non-negligent fashion, which includes removal of mounds placed upon median strips by the county during its plowing operations.[2] The Sanems have failed to cite any au-

[2] Neither party has argued that sec. 81.15, Stats., applies to the county's obligation in the instant case. Section 81.15 provides,

"**81.15 Damages caused by highway defects; liability of town and county.** If damages happen to any person or his or her property by reason of the insufficiency or want of repairs of any highway which any town, city or village is bound to keep in repair, the person sustaining the damages has a right to recover the damages from the town, city or village. If the damages happen by reason of the insufficiency or want of repairs of a highway which any county by law or by agreement with any town, city or village is bound to keep in repair, or which occupies any land owned and controlled by the county, the county is liable for the damages and the claim for damages shall be against the county. If the damages happen by reason of the insufficiency or want of repairs of a bridge erected or maintained at the expense of 2 or more towns the action shall be brought against all the towns liable for the repairs of the bridge and upon recovery of judgment the damages and costs shall be paid by the towns in the proportion in which they are liable for the repairs; and the court may direct the judgment to be collected from each town for its proportion only. The amount recoverable by any person for any damages so sustained shall not exceed $50,000. The procedures under s. 893.80 shall apply to the commencement of actions brought under this section. No action may be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless the accumulation existed for 3 weeks."

The parties have agreed that sec. 81.15, and subsequent case law interpreting the statute have dealt with the limits upon the

thority for this proposition;[3] however, they argue that under common law tort principles, assumed obligations must be exercised with reasonable care. *Glanzer v. Shepard,* 233 N.Y. 236, 239, 135 N.E. 275 (1922). Therefore, the Sanems assert that once Ozaukee county contracted with the State of Wisconsin to remove snow and ice from the highways, it must do so in a non-negligent manner. They state that it is not their contention that the county has any obligation to patrol the intersections and remove snow which has accumulated after a snowfall on median strips or banks surrounding intersections. Rather, they maintain that once the county assumes the obligation of removing snow from the highways, it must utilize reasonable care to do so and that creating large mounds of snow on median strips adjacent to intersections which subsequently obstruct drivers' vision does not satisfy this standard of reasonable care.

The county, on the other hand, argues that the trial court and court of appeals correctly utilized the case of *Walker v. Bignell,* 100 Wis. 2d 256, in order to determine that public policy considerations favor no liability on the

municipality's common law duty to keep its sidewalks, as part of the highway, reasonably safe for pedestrian travel. *See, Kobelenski v. Milwaukee & S. Transport Corp.,* 56 Wis. 2d 504, 202 N.W.2d 415 (1972); *Stippich v. Milwaukee,* 34 Wis. 2d 260, 149 N.W.2d 618 (1967); and *Laffey v. Milwaukee,* 4 Wis. 2d 111, 89 N.W.2d 801 (1958). Because the Sanems have not argued that the county failed to keep the *traveled* portion of the highways cleared, but rather that it negligently mounded up the snow on the median strip, they have taken the position that this allegation of negligence concerning the untraveled portion of the highway is outside the statute's purview. For purposes of this review, we have accepted the Sanems' position.

[3] The petitioners have directed our attention to *Raube v. Christenson,* 270 Wis. 297, 70 N.W.2d 639 (1955), and *Flamingo v. Waukesha,* 262 Wis. 219, 55 N.W.2d 24 (1952); however, we find these cases to be of little help to us in resolving this issue, due to factual differences.

county's part for injuries resulting from the county's failure to maintain intersections which are obstructed by snow mounds on adjacent medians.

Since *Holytz v. Milwaukee,* 17 Wis. 2d 26, 115 N.W. 2d 618 (1962), where municipal tort immunity was abrogated, municipalities have had the common law duty to conduct certain ministerial functions in a non-negligent manner. The *Holytz* decision applied the abrogation of immunity to the state, counties, cities, villages, towns, school districts, drainage districts, etc. *Id.* at 40. Subsequent cases have reiterated this common law duty. *See, Stippich v. Milwaukee,* 34 Wis. 2d at 270, which dealt with a municipality's duty to use reasonable care to maintain its sidewalks in a reasonably safe condition for the travel of pedestrians. Therefore, we are no longer concerned with blanket immunity on the county's part and, thus, begin our discussion with an analysis of negligence law.

As this court has often stated, the elements of negligence are

"(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Coffey v. Milwaukee,* 74 Wis. 2d 526, 531, 247 N.W.2d 132 (1976), citing *Falk v. Whitewater,* 65 Wis. 2d 83, 85, 221 N.W.2d 915 (1974), and *Padilla v. Bydalek,* 56 Wis. 2d 772, 776, 203 N.W.2d 15 (1973).

Negligent conduct is an essential element of a cause of action. In *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979), the court defined negligent conduct by quoting from *Restatement (Second) of Torts,* sec. 284(a) (1965), as follows:

" 'an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another.' "

The court further observed that the test of negligence is whether the conduct complained of foreseeably creates an unreasonable risk to others. This risk does not have to be a particular plaintiff, and the test is whether the conduct creates an unreasonable risk to the world at large. This is a jury question. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d at 732.

The court has also acknowledged that legal cause in negligence consists of two parts, the first being cause-in-fact, the second "proximate cause." Regarding the first component, or cause-in-fact, this court has stated that the test is whether the negligence was a "substantial factor" in producing the plaintiff's injury. *Morgan v. Pennslyvania General Ins. Co.,* 87 Wis. 2d at 735. This is normally a jury question.

Because this case involves a dismissal pursuant to § 802.06(2)(f), Stats., the factual allegations in the complaint must be accepted as true, while the legal conclusion of negligence need not be accepted as true. *Hartridge v. State Farm Mut. Auto. Ins. Co.,* 86 Wis. 2d 1, 4, 271 N.W.2d 598 (1978). The factual allegations are that Ruth Sanem was traveling eastbound on highway 84 and that she was unable to observe any northbound traffic on highway 57 because the county had created a large snow mound on the median which obscured her vision. As a result, when she attempted to travel across the northbound lanes of highway 57, her vehicle was struck by an oncoming car. We also observe that the county undertook to clear these highways of snow.

As Dean Prosser has stated concerning the undertaking to render services gratuitously or for consideration,

"Where performance clearly has been begun, there is no doubt that there is a duty of care." Prosser, *Handbook of the Law of Torts,* sec. 56 at 346 (4th ed. 1971).

· *Restatement (Second) of Torts,* sec. 323 (1965), enumerates,

*"Negligent Performance of Undertaking to Render Services*

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

It appears that a reasonable jury could have concluded that the county's conduct in creating the snow mound "involved an unreasonable risk of causing an invasion" of Ruth Sanem's interest as a driver. They could have further concluded that the county failed to exercise reasonable care in plowing the highways by creating this snow mound and that the presence of the mound was a substantial factor in producing Ruth Sanem's injuries, since it prevented her from seeing oncoming traffic on highway 57.

However, this court has also recognized that liability does not necessarily follow even after negligence and negligence as a cause-in-fact of injury have been established. This is because "proximate cause," the second component of causation in negligence cases, which is separate from the cause-in-fact determination, may deny recovery. "Proximate cause" involves public policy considerations and is a question of law solely for judicial determination. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d at 737; *Coffey v. Milwaukee,* 74 Wis. 2d

at 541; and *Haas v. Chicago & North Western Ry. Co.*, 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970).

The public policy reasons for not imposing liability in spite of a finding of negligence as a substantial factor in producing the plaintiff's injury are:

" '(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.' " *Walker v. Bignell,* 100 Wis. 2d at 265 (citations omitted). *See also, Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d at 737; *Coffey v. Milwaukee,* 74 Wis. 2d at 541; *Haas v. Chicago & North Western Ry. Co.,* 48 Wis. 2d at 326–27; and *Colla v. Mandella,* 1 Wis. 2d 594, 599, 85 N.W.2d 345 (1957).

Because the application of public policy considerations is solely a court function, a full factual resolution of the cause of action by trial is not required in all cases. This is so in cases where "the question of public policy is fully presented by the complaint." *Haas v. Chicago & North Western Ry. Co.,* 48 Wis. 2d at 326–27. *See also, Colla v. Mandella,* 1 Wis. 2d at 598–99. We agree with the trial court and court of appeals that the instant case is one where the public policy considerations are fully presented by the complaint. We also find two of the above public policy concerns to be overriding. They are: (1) That allowance of recovery would place too unreasonable a burden on the county and (2) allowance of recovery would enter a field that has no sensible or just stopping point. For these reasons, we find that "proximate cause"

considerations preclude the imposition of liability on Ozaukee county according to the facts as set forth in this complaint, in spite of our assumption that the plaintiffs could have proved negligence and negligence as a cause-in-fact of Ruth Sanem's injury.

Subjecting the county to liability for the obstruction produced by a snow mound on a median adjacent to an intersection would place an "unreasonable and unmanageable" burden upon the county. *Walker v. Bignell,* 100 Wis. 2d at 266. First, if Ozaukee county were to be subject to potential liability for negligent clearance of snow mounds from medians at intersections, it may attempt to clear all such medians of any accumulations. This would impose a virtually unworkable task upon the county and, as the lower courts noted, the added costs of such an endeavor may cause the expense of snow plowing operations to become prohibitive, resulting in no plowing programs or only partial programs. Second, the height of such snow mounds or banks would become a significant factor in numerous intersection accident cases, as well as the determination of whether the county had created the bank itself, partially created it, or whether the mound had been formed by natural snowfalls and drifting. Because of the staggering number of intersection accidents which occur yearly, the county would be involved in a substantially increased number of trials, with the accompanying costs and potential financial liability.

Also, we find that exposing the county to such liability according to the facts of this case is contrary to public policy because of the physical properties of snow and the nature of snow plowing. Snow is ubiquitous in the state of Wisconsin during the winter months, and often accompanying the snowfall is the problem of impassable roads if the depth of accumulation is significant, or slippery conditions if the snow becomes packed down by

passing vehicles. Therefore, a snowfall often creates an emergent situation, and the county's primary obligation is to remove the snow from the highway as quickly and thoroughly as possible. If the snowfall is of a fast enough rate, the county's first priority is to clear enough of a thoroughfare to allow emergency vehicles through. After this has been accomplished, the county's second priority is to remove snow as rapidly as possible in order that citizens may travel safely and quickly and carry out their normal daily activities.

A natural consequence of snow plowing is that the snow must be placed somewhere. This is usually on median strips and sides of highways. If the county is to devote its energy toward removing the snow from the highways as quickly as possible, we find it contrary to public policy to impose upon the county the added responsibility of avoiding the creation of snow mounds on medians near any intersections where obstruction of drivers' vision may result. We can only foresee that this added concern will decrease the efficiency of snow removal operations and may indeed result in added frustrations of a different nature through delays in the normal plowing process itself.

In summary, we hold that public policy considerations preclude the imposition of liability on Ozaukee county according to the facts as set forth in the complaint.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). For purposes of this proceeding, which is still at the pleading stage, the municipality admits that in fulfilling its contract to remove snow from a highway, the municipality negligently deposited snow in the median obstructing visibility at an intersection and negligently failed to remove the snow it had deposited. The municipality

further admits that its negligence caused the plaintiffs personal injury.

On the basis of the complaint, the majority holds that public policy considerations require that the municipality be immune from liability for its negligent acts. I am not persuaded by the majority's reasoning.

This court has repeatedly said that "[t]he policy of Wisconsin tort law, a liberal one, is to compensate those who are injured by negligent acts." *Hartridge v. State Farm Mut. Auto. Ins. Co.,* 86 Wis. 2d 1, 9, 271 N.W.2d 598 (1978). Yet in this case the majority finds that the general public policy that a tortfeasor compensate the victim must yield to the following two public policy considerations:

"(1) allowance of recovery would place too unreasonable a burden on the county and

"(2) allowance of recovery would enter a field that has no sensible or just stopping point." Slip op., p. 539, *supra.*

The first public policy consideration upon which the majority relies suggests that immunity is being conferred not because of the facts and circumstances of the case but because of the governmental status of the defendant. I object to that reasoning because the doctrine of municipal immunity no longer exists in this state. In *Holytz v. Milwaukee,* 17 Wis. 2d 26, 39, 115 N.W.2d 618 (1962), we said that "so far as governmental responsibility for torts is concerned, the rule is liability— the exception is immunity." Furthermore, we concluded in *Holytz* that the legislature, not this court, has the power to reinstate municipal immunity or to impose limitations on municipal tort liability. In *Holytz* we wrote:

"If the legislature deems it better public policy, it is, of course, free to reinstate immunity. The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be pre

liminary to the commencement of judicial proceedings for an alleged tort." 17 Wis. 2d at 40.

I conclude that the majority is exercising an exclusively legislative power if it is saying that as a matter of public policy the defendant's status as a municipality makes it immune from tort liability in this case.

In addition, the majority's emphasis on the status of the defendant as a municipality is unpersuasive because the municipality does not appear to have been performing a governmental act. It was performing a contract from which it collected revenue.* A private corporate entity could have performed a contract for the same services. I doubt that the majority would have made a private corporation immune from liability as a matter of law at the pleading stage. Unless the legislature provides otherwise, a municipality which undertakes a contractual duty should, like a private entity which undertakes the same contractual duty, be subject to liability for failing to exercise reasonable care in performing that duty. *Dunwiddie v. Rock County*, 28 Wis. 2d 568, 137 N.W.2d 388 (1965).

Finally, the majority makes no showing that liability would impose an unreasonable burden on the municipality in this case. As Professor Van Alstyne notes:

"The fear that large unanticipated impositions upon public funds will be required to satisfy tort damage claims is exaggerated; the ready availability of liability insurance provides adequate protection at moderate cost which may be budgeted in advance. Private corporate enterprises with substantial potential risk exposures

---

* Since *Holytz*, it has been unnecessary to separate a municipality's operations into those that are proprietary and those that are governmental in order to determine the municipality's tort liability. 17 Wis. 2d at 39–40. The municipality is liable in tort for both types of operations but is not liable in tort for quasi-legislative and quasi-judicial functions.

have managed to bear the burdens of general tort liabilities without observable detriment to operational success, and there is little reason to believe that public entities would not do likewise." Van Alstyne, *Governmental Tort Liability: A Decade of Change,* 1966 U. Ill. L.F. 919, 921 (1966).

The second public policy consideration upon which the majority relies is that allowing recovery in this case would open a floodgate of litigation "that has no sensible or just stopping point." Slip op., p. 539, *supra.* I disagree. Liability would be specific and well defined, being limited to injuries caused when a municipality contracts to remove snow from the highway and negligently deposits and fails to remove "mounds of snow on median strips adjacent to intersections which subsequently obstruct drivers' vision" (p. 535, *supra*). Our decision would not subject municipalities to liability in cases which have not arisen and are not being considered by this court.

Neither of the majority's public policy arguments convinces me that this case deserves to be treated as an exception to the general rule that tortfeasors should compensate their victims. The best way to balance the interests of the injured person and the interests of the municipality is through traditional tort and negligence law. The law does not expect officials to do the impossible or the unreasonable. In order for the plaintiffs in this case to convince the fact finder that the county was negligent, that is, that the county exposed them to an unreasonable risk of harm, they would have to demonstrate that the likelihood and gravity of the threatened harm outweighed both the utility of the conduct and the burden on the county of removing the danger. In making that determination in this case the fact finder would consider such factors as whether the county had notice of the dangerous condition, the length of time the snow had

been piled on the median, the availability and cost of personnel and equipment to remove the snow, the availability of places to pile the snow, the weather conditions at the time, and the amount of traffic on the highway. The traditional cause requirement, that is, that the negligence was a substantial factor in producing the plaintiffs' injuries, in conjunction with the other elements of a cause of action for negligence, operates to prevent the imposition of an excessive burden on the county. See *State v. Abbott*, 498 P.2d 712, 725 (Alaska 1972).

If the fact finder concludes that the municipality was causally negligent, the circuit court can then consider, as we suggested in *Coffey v. Milwaukee*, 74 Wis. 2d 526, 543, 247 N.W.2d 132 (1976), whether public policy requires that the municipality be relieved from liability. Once the facts have been fully developed, it may become apparent to the trial judge that the injury was too remote from the negligence or too wholly out of proportion to the culpability of the negligent tortfeasor; in retrospect it may appear too highly extraordinary that the negligence brought about the harm. If so, allowing recovery might place too unreasonable a burden on an entity contracting to remove snow from highways or might cause the court to enter a field that has no sensible or just stopping point.

I would reverse the decision of the court of appeals and remand this case to the trial court for a trial on the issue of negligence.

I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins in this dissent.