James MCMAHON and Linda McMahon, Plaintiffs-Appellants,†

v.

ST. CROIX FALLS SCHOOL DISTRICT and Wausau Underwriters Insurance Company, Defendants-Respondents.

Court of Appeals

No. 98–2413. *Submitted on briefs March 30, 1999.—Decided May 4, 1999.*

(Also reported in 596 N.W.2d 875.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jason W. Whitley* of *Novitzke, Gust & Sempf* of Amery.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Mark A. Siefert* of *Law Offices of Stilp & Cotton* of Eau Claire.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. James and Linda McMahon appeal a summary judgment dismissing their wrongful death suit against defendants St. Croix Falls School District and Wausau Underwriters Insurance Company (the district) for the suicide of their fifteen-year-old son, Andrew. The McMahons offer two reasons for reversal. First, they argue that the circuit court erred when it established a bright-line rule, based on public policy considerations, that a school district has "absolute immunity for its negligent acts when a student commits suicide." Second, they claim that the public policy concerns expressed in *Sanem v. Home Ins. Co.*, 119 Wis. 2d 530, 350 N.W.2d 89 (1984), are inapplicable here. We reject these arguments and conclude that under *Bogust v. Iverson*, 10 Wis. 2d 129, 102 N.W.2d 228 (1960), Andrew's suicide constitutes an interven-

ing, superseding cause that breaks the chain of causation. Accordingly, we affirm the judgment.

## I. BACKGROUND

The parties do not dispute the following facts. At the time of his death, Andrew was a freshman at St. Croix Falls High School. On January 26, 1996, James McMahon, Andrew's father, drove Andrew to school, but Andrew did not attend classes that day. A district policy provides that if a student is absent from school, the school will call the parents at home or work to verify the absence. The district did not call the McMahons, however. A classmate, Jamie Stocker, discovered Andrew's body in Stocker's closed garage. An autopsy lists the cause of death as suicide from self-immolation; Andrew doused himself with gasoline and set himself on fire. According to the McMahons' affidavits, they were unaware that Andrew had received five failing grades, had been removed from the basketball team for those grades, and had been "very upset in school and at times crying."[1]

In granting summary judgment, the circuit found no disputed material issues of fact and dismissed the McMahons' complaint with prejudice on public policy grounds, citing *Sanem* as controlling authority. The circuit court concluded that the district both owed and breached a duty to Andrew and his parents, but the court did not identify that duty. The circuit court dis-

---

[1] The parties dispute the time of death. The McMahons contend that Andrew committed suicide between 2:30 and 3 p.m., while the district points out that because Andrew's body was discovered at 2:30 p.m., Andrew died before 2:30 p.m. The McMahons argue that if the school had conformed with its policy and contacted them, they would have had time to locate Andrew and presumably prevent his death.

tinguished this case from *Bogust* on the basis that *Bogust* found no duty on the defendant. Finally, the circuit court concluded that based on the undisputed material facts: (1) Andrew's death was too wholly out of proportion to the district's culpability; (2) in retrospect, it appeared too highly extraordinary that the district's negligence should have brought about the harm; and (3) allowing recovery would enter a field with no sensible or just stopping point. *See Coffey v. Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976). The circuit court dismissed the McMahons' complaint with costs.

After the McMahons filed their notice of appeal, they filed a motion to set aside the judgment under §§ 806.07(1)(a), (h) and 808.07(2)(am), STATS., attaching to it, for the first time, Stocker's affidavit. The basis of the McMahons' motion to set aside the judgment was that when they filed their brief opposing the district's motion for summary judgment, they were unaware of Stocker's account of the day's events as reflected in her affidavit. The affidavit states that on January 26, Stocker told a school counselor that Andrew "was planning to skip school that day," that he was probably at her house, and that someone should check on him or contact his parents. Stocker further indicated that Andrew "seemed to be bothered by something because he seemed depressed and preoccupied" and that he had said something to the effect that he was "sick and tired of this life." Stocker's affidavit also indicates that she left school without permission that afternoon to check on Andrew at her home and found him dead. The district disputes these facts, but states that they are immaterial to the public policy issue here. We agree

with the district that such facts, even if considered by the circuit court, would not change the result.[2]

## II. ANALYSIS

Whether the circuit court properly granted the district's motion for summary judgment is a question of law we review without deference to the circuit court. *See Gaertner v. Holcka*, 219 Wis. 2d 436, 445–46, 580 N.W.2d 271, 275 (1998). In determining if the circuit court properly granted summary judgment, we apply the same methodology as the circuit court. *M&I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). Under § 802.08(2), STATS., summary judgment is appropriate when the court is satisfied that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Further, summary judgment is a drastic remedy and is usually inappropriate to resolve negligence issues. *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 517, 383 N.W.2d 916, 920 (Ct. App. 1986).

---

[2] The record does not reflect whether the circuit court considered the motion to set aside the judgment, and the McMahons' notice of appeal and brief do not address that motion. Rather, this appeal involves the court's grant of summary judgment. Moreover, it appears that this disputed affidavit was not part of the summary judgment proofs made available to the circuit court when making its decision to dismiss the action on summary judgment. Similarly, it is not a proper part of this court's record on review of summary judgment, and we need not consider it. *See* § 802.08(2) and (3), STATS.

The McMahons contend that contrary to Wisconsin tort law, the circuit court erroneously "created a bright line test which establishes that under no conceivable circumstances, no matter how egregious a school district[']s negligence, can a school ever be found liable" for a minor student's suicide. They contend that the district breached its duty to call them and to follow up after a school counselor learned that Andrew was despondent and absent from school. Additionally, they argue that *Coffey*'s public policy concerns, as reiterated in *Sanem*, are inapplicable here because once duty and breach are established, the school is liable for all harm flowing from that breach. Thus, they argue, the "proportionality of the injury to the negligence" should not control. Finally, the McMahons insist that *Toeller v. Mutual Serv. Cas. Ins. Co.*, 115 Wis. 2d 631, 340 N.W.2d 923 (Ct. App. 1983), is directly on point and holds that schools do not have absolute immunity for a minor student's suicide.

Under *Bogust*, the district responds, suicide is an intervening cause that breaks the chain of causation, thus making a public policy analysis unnecessary. Alternatively, the district insists that even if the causal chain is unbroken, the court correctly held that three public policy grounds preclude liability. First, it asserts that the injury is too remote from the negligence because Andrew's suicide occurred off school grounds and because it is unreasonable to require the district to "search for absent students off campus . . . to prevent suicide." Second, the district maintains that Andrew's death is too wholly out of proportion to its failure to report truancy and to the alleged failure of its counselor to follow up on Stocker's report that Andrew was

despondent.[3] Third, the district alleges that allowing recovery would create liability with no sensible or just stopping point. To allow recovery here, it contends, would require school districts to respond to every report of truancy or a report of a student's despondency "as an imminent suicide," perhaps further requiring that they institute commitment proceedings. Finally, the district argues that *Toeller*, the case on which the McMahons heavily rely, is distinguishable on its facts.

Both parties' arguments reflect confusion about the law governing a circuit court's ability to preclude liability on public policy grounds. Nevertheless, we agree with the district that *Toeller* is distinguishable on its facts and that *Bogust* controls. We conclude that under the law set out in *Bogust* and applied to this case's undisputed facts, Andrew's suicide constitutes an intervening and superseding cause that breaks the chain of causation.

■

We begin by observing that to establish a negligence claim, the plaintiff must prove that: (1) the defendant had a duty of care; (2) the defendant breached that duty; (3) a causal connection exists between the conduct and the injury; and (4) damage resulted from the injury. *See Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 15, 402 N.W.2d 711, 717 (1987). A defendant is negligent when he or she commits an act when some harm to someone is foreseeable;

---

[3] The district also argues that in retrospect, it appears too highly extraordinary that the alleged negligence of failing to report truancy and following up on Stocker's report to the school counselor brought about Andrew's death. Because this argument is conclusory and insufficiently developed, we will not address it. *See Shannon v Shannon*, 150 Wis. 2d 434, 446, 442 N.W.2d 25, 31 (1989).

once negligence is established, the defendant is liable for unforeseeable and foreseeable consequences. *See A.E. Inv. Corp. v. Link Builders,* 62 Wis. 2d 479, 484, 214 N.W.2d 764, 766 (1974).

■ In negligence cases, legal cause consists of two parts: cause-in-fact and "proximate cause." *See Sanem,* 119 Wis. 2d at 537, 350 N.W.2d at 92. The test for cause-in-fact, which is a jury question, is whether the negligence was a substantial factor in causing the harm. *See Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 735, 275 N.W.2d 660, 666 (1979). Generally, it is better procedure for a court to submit negligence and cause-in-fact issues to the jury before addressing public policy issues or legal cause. *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 654, 517 N.W.2d 432, 443 (1994). This general rule notwithstanding, the circuit court may grant summary judgment on public policy grounds before trial when the pleadings present a public policy question *Id.*[4]

---

[4] A court can deny recovery if it concludes that any of the following public policy considerations are present: (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the negligent tortfeasor's culpability; (3) in retrospect, it appears too highly extraordinary that the negligence should have brought about the harm; (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; (5) because allowance of recovery would be too likely to open up the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *Coffey v. Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976); *Schlomer v. Perina,* 169 Wis. 2d 247, 253, 485 N.W.2d 399, 402 (1992).

Wisconsin follows the general rule that "suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render the defendant civilly liable."[5] *See Bogust*, 10 Wis. 2d at 137, 102 N.W.2d at 232. A·superseding cause is an intervening force that relieves an actor from liability for harm that his negligence was a substantial factor in producing. *See Stewart v. Wulf*, 85 Wis. 2d 461, 475, 271 N.W.2d 79, 85 (1978). Because *Coffey*'s public policy factors are listed disjunctively, we need only find one to relieve the district of liability. *See Tobias v. County of Racine*, 179 Wis. 2d 155, 161–62, 507 N.W.2d 340, 342 (Ct. App. 1993). Therefore, because the doctrine of intervening and superseding cause is "another way of saying the negligence is too remote from the injury to impose liability," *Morgan*, 87 Wis. 2d at 738, 275 N.W.2d at 667, we limit our discussion to this factor. The application of superseding cause is an issue of law. *See Stewart*, 85 Wis. 2d at 475, 271 N.W.2d at 86.

*Bogust* explains that:

> Where an action is brought under a wrongful death statute the general rule is that suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render defendant civilly liable.

---

[5] For a historical discussion of liability for suicide, see *Logarta v. Gustafson*, 998 F. Supp. 998 (E.D. Wis. 1998). Courts' reluctance to impose liability on others for suicide stems from two legal traditions embedded in English common law and transplanted into our country's history: (1) a refusal to impose a duty to protect another from harm (a duty of rescue); and (2) the historical association of suicide with criminality. *Id*. at 1000–03.

. . . .

> As a general rule a person will not be relieved of liability by an intervening force which could reasonably have been foreseen, nor by one which is a normal incident of the risk created. However, if such intervening force takes the form of suicide the practically unanimous rule is that such act is a new and independent agency which does not come within and complete a line of causation from the wrongful act to the death and therefore does not render defendant liable for the suicide.

*Bogust*, 10 Wis. 2d at 137, 139, 102 N.W.2d at 232, 233 (quoting with approval from Annotation, *Civil Liability for Death by Suicide*, 11 A.L.R.2d 751, 756–57 (1950)). In other words, suicide is an intervening, superseding cause, *id.*, which is another way of saying that the injury is too remote from the negligence. *See Morgan*, 87 Wis. 2d at 738, 275 N.W.2d at 667.

*Bogust* further explains that an exception to this general rule is when the defendant's negligence or wrongful act creates in the deceased an "uncontrollable impulse," a delirium, frenzy or rage, during which the deceased commits suicide "without conscious volition to produce death." *Id.* at 138, 102 N.W.2d at 232. This exception recognizes a cause of action in which the defendant actually causes the suicide. *See, e.g., Bruzga v. PMR Architects, P.C.*, 693 A.2d 401, 403 (N.H. 1997); *Logarta v. Gustafson*, 998 F. Supp. 998, 1004–05 (E.D. Wis. 1998). In contrast, when suicide results from a "moderately intelligent power of choice," even if the choice is made by a disordered mind, the suicide is a new and independent cause of death that immediately ensues. *Id.*; *see also Barber v. Industrial Comm'n*, 241 Wis. 462, 465, 6 N.W.2d 199, 201 (1942).

The general rule from *Bogust* applies here, and the McMahons do not argue the uncontrollable impulse exception.[6] Instead, we read their *in loco parentis* argument as invoking a second exception to *Bogust*'s general rule that our courts have not adopted: "a special relationship" between the defendant and the deceased that imposes a higher duty of care on the defendant. As the Rhode Island Supreme Court has explained:

> With regard to civil claims alleging, as a basis for liability, the negligence of a defendant as being the proximate cause of a decedent's suicide, the majority rule that has evolved is that unless a special relationship existed between the defendant and the deceased that created an increased or higher duty of care to protect a potentially suicidal person from foreseeable injury, the Restatement (Second) Torts § 455 (1965) rule [the *Bogust* rule and uncontrollable impulse exception] is the most favored and applied.

*Clift v. Narragansett Television*, 688 A.2d 805, 810 (R.I. 1996); *see also Bruzga*, 693 A.2d at 402–03 (discussing both exceptions to the general rule).

---

[6] In any event, there are no facts suggesting that the alleged negligence produced a frenzy, rage or uncontrollable impulse during which Andrew took his own life. *See Bogust v. Iverson*, 10 Wis. 2d 129, 137–38, 102 N.W.2d 228, 232–33 (1960). The summary judgment materials before the trial court, even including Stocker's affidavit, do not indicate that the school's negligence created an uncontrollable impulse or a frenzy or delirium in Andrew that deprived him of his ability to recognize the nature and likely result of his actions. *See Logarta*, 998 F. Supp. at 1005–06. In contrast, the materials depict a young man who decided not to attend school, selected a location off school premises, and that afternoon, tragically ended his life.

Special relationships are typically custodial or at least supervisory, such as the relationship between doctor and patient, jailer and inmate, or teacher and student. *See Logarta*, 998 F. Supp. at 1004–05 (collecting cases); *Webstad v. Stortini*, 924 P.2d 940, 947–48 (Wash. App. 1996); *Brooks v. Logan*, 903 P.2d 73, 80–81 (Idaho 1995). Jurisdictions adopting the special relationship exception to *Bogust*'s general rule in the school-student context have held that the intervening and superseding cause doctrine is inapplicable when the suicide resulted from the district's alleged failure to exercise due care to protect its students. *See, e.g., Webstad*, 924 P.2d at 947–48; *Brooks*, 903 P.2d at 80; RESTATEMENT (SECOND) OF TORTS § 315 (1965);[7] *see also* Eugene C. Bjorklun, *School Liability for Student Suicides*, 106 ED. LAW. REP. 21 (March 1996) (discussing the special relationship exception). Wisconsin has not adopted the special relationship exception or § 315 of the RESTATEMENT, but has adhered to *Bogust*.

In any event, the McMahons do not specifically discuss the special relationship exception, except to cite Wisconsin law providing that a school stands *in loco parentis* to its students. *See In re L.L.*, 90 Wis. 2d 585, 596, 280 N.W.2d 343, 348–49 (Ct. App. 1979). Relying on that general holding, they argue that public policy considerations dictate that educational institu-

---

[7] The RESTATEMENT (SECOND) OF TORTS § 315 (1965), states, in pertinent part:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
 (a) a special relation[ship] exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
 (b) a special relation[ship] exists because the actor and the other which gives to the other a right to protection.

tions charged with the care of minors should reasonably foresee that the unexplained absences of minor children can reasonably lead to harm. Wisconsin law is clear, however, that the uncontrollable impulse rule is the only exception to the general rule that suicide is an intervening and superseding cause precluding liability. *See Bogust*, 10 Wis. 2d at 138–39, 102 N.W.2d at 232–33.

Next, we reject the McMahons' argument that *Bogust* should be distinguished because, unlike the circuit court here, *Bogust* found no duty and because the deceased in *Bogust* was an adult while the district here had an *in loco parentis* relationship with Andrew. In *Bogust*, the deceased was a nineteen-year-old college student who had received counseling from the director of student personnel services. *Id.* at 131, 102 N.W.2d at 229. The student's parents filed a wrongful death action against the director alleging that he had negligently terminated their daughter's counseling and failed to notify them, thus causing her suicide some six weeks later. *Id.* at 131, 137, 102 N.W.2d at 229, 232. The circuit court dismissed the complaint for failure to state a claim. Our supreme court affirmed, noting that "[t]he basic theory of plaintiffs' complaint and their argument on appeal is the foreseeability of Jeannie's suicide as the proximate result of defendant's acts and omissions." *Id.* at 137, 102 N.W.2d at 332. Because the basic theory of the two cases are the same and the factual differences are insufficient, we do not distinguish *Bogust* from the present case.

Finally, contrary to the McMahons' assertions, *Toeller* is distinguishable and provides no basis for reversal. In *Toeller*, a minor student was suspended from riding the school bus, and while riding his bike to school, lost control and swerved into a truck. *Id.* at 634,

228

340 N.W.2d at 925. The student sued the school district and argued that the school's failure to inform his parents of the suspension caused the student's head injuries. *Id.* at 636, 340 N.W.2d at 926. We held that it was foreseeable that the student would use other means to commute to and from school and that the district's failure to notify the parents of the suspension from the bus could cause the student injury. *Id.* Thus, we concluded that a duty existed, which the district breached. *Id.* We rejected the district's arguments that public policy considerations precluded liability. *Id.* at 637–38, 340 N.W.2d at 926–27.

Unlike *Toeller*, here we are dealing with a death from suicide. Our supreme court has held that suicide is an intervening and superseding force that breaks the chain of causation, even if negligence and cause-in-fact have been established. *See Bogust*, 10 Wis. 2d at 137, 102 N.W.2d at 232. Further, our courts have held that the intervening and superseding cause doctrine is another way of saying that the public policy consideration that the injury is too remote from the negligence and precludes liability. *Morgan*, 87 Wis. 2d at 738, 275 N.W.2d at 667.

■

Because *Bogust* controls, we need not decide whether the McMahons have established the foreseeability of an unreasonable risk of harm, that is, whether they have established a duty. This is because even if the district had a duty to notify the McMahons or follow up on the student's report to a school counselor that Andrew was despondent, the suicide is an intervening and superseding cause and is thus too remote from the negligence to render the district liable.

*By the Court.*—Judgment affirmed.