Estate of Robert Wagoner, Amy Simchak, Erin Sweet, and Lisa Stoflet, Plaintiffs-Appellants,†

v.

City of Milwaukee, Defendant-Respondent,

Milwaukee County and Compcare Health Services Insurance, Defendants.

Court of Appeals

*No. 01–0623. Submitted on briefs October 2, 2001.—Decided November 20, 2001.*

2001 WI App 292

(Also reported in 638 N.W.2d 382.)

† Petition to review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas K. Houck* of *Michael F. Hupy & Associates, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *Patricia A. Fricker*, assistant city attorney, Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J.    The Estate of Robert Wagoner appeals from the trial court's order granting summary judgment to the City of Milwaukee.[1] The Estate sued the City, claiming that the City was negligent for failing to cut weeds within the guardrail of a median strip, which obstructed the visibility of motorists using the highway. The trial court dismissed the case, concluding that the City was immune from common law liability under *Walker v. Bignell*, 100 Wis. 2d 256, 266–267, 301 N.W.2d 447, 453–454 (1981). We affirm.

¶ 2.    Robert Wagoner's Estate brought a negligence claim against the City after Wagoner lost his life in a car and motorcycle accident. Wagoner was riding his motorcycle east on Good Hope Road near the

---

[1] The Estate filed a survivorship claim against the City. Wagoner's daughters, Amy Simchak, Erin Sweet, and Lisa Stoflet, also brought individual claims against the City. As the plaintiffs' claims are essentially the same, we will refer to the plaintiffs as the "Estate."

intersection of Highway 41 and Highway 45 when Daniel Buckel, who was traveling west on Good Hope Road, attempted to turn left onto Highway 41/45, hitting and killing Wagoner. The complaint alleged that the overgrown vegetation within the guardrail of the median between the eastbound and westbound lanes on Good Hope Road obscured both Wagoner's and Buckel's vision. After examining photographs of the scene, the trial court determined that the vegetation in the median was between three to four feet high at the time of the accident.

¶ 3. As material here, Wagoner's Estate sued the City, alleging that the City was negligent for failing to properly maintain the median area. Specifically, the Estate argued that the City was negligent for mowing all of the vegetation in the median except for the vegetation within the guardrail. The City moved for summary judgment claiming that it was immune from liability under *Walker v. Bignell*, 100 Wis. 2d 256, 266–267, 301 N.W.2d 447, 453–454 (1981), and *Estridge v. City of Eau Claire*, 166 Wis. 2d 684, 687, 480 N.W.2d 513, 514 (Ct. App. 1991), both of which exonerated municipalities from common law liability for the negligent failure to cut roadside vegetation. Wagoner's Estate argued that its case was factually distinguishable from *Walker* and *Estridge* because the City did not fail to cut the vegetation in the median; rather, it was negligent when it cut the vegetation on the median strip but did not cut the portion of the vegetation within the guardrail.

¶ 4. The trial court agreed with the City, concluding that while the City appeared to concede that it was negligent, it was immune from liability under *Walker*. The trial court gave several policy reasons for its decision to grant immunity, including: (1) if the City

was a party to every intersection accident, it would experience a large financial drain, and (2) if municipalities faced liability for negligently mowing, as the plaintiffs suggested, municipalities would choose not to mow at all to avoid liability.

¶ 5. The question of whether liability should be imposed upon the City is a policy question. *Estridge*, 166 Wis. 2d at 686, 480 N.W.2d at 513–514. Whether a defendant should or should not be held liable for a certain act as a matter of policy is a question of law. *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶ 13, 246 Wis. 2d 933, 632 N.W.2d 59. Our review of the trial court's grant of summary judgment is *de novo,* and we apply the same standards as did the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). First, we examine the pleadings to determine whether a proper claim for relief has been stated. *Ibid.* If the complaint states a claim and the answer joins the issue, our inquiry then turns to whether any genuine issues of material fact exist. *Ibid.* WISCONSIN STAT. § 802.08(2) (1999–2000) sets forth the standard by which summary judgment motions are to be judged:[2]

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

Wagoner's Estate contends that the City is not entitled to immunity because this case is distinguishable from *Walker v. Bignell*, 100 Wis. 2d 256, 301 N.W.2d 447 (1981).

¶ 6. In *Walker*, the plaintiffs were injured in a two-car accident at a rural intersection. *Walker*, 100 Wis. 2d at 258, 301 N.W.2d at 449. The plaintiffs sued the municipalities alleging that they were negligent because the areas adjacent to the intersection "were so overgrown with weeds that the view of the intersection by approaching drivers was obstructed." *Id.*, 100 Wis. 2d at 258, 301 N.W.2d at 449–450. *Walker* decided, as a matter of public policy, that municipalities should not be liable "for injuries caused by uncut vegetation obscuring motorists' vision at highway intersections." *Id.*, 100 Wis. 2d at 266–267, 301 N.W.2d at 454. *Walker* gave several reasons for its decision to grant immunity from common law liability: (1) exposure to liability would "place an unreasonable and unmanageable burden" on municipalities to keep "areas adjacent to every highway intersection clear of visual obstructions at whatever intervals are necessitated by the vicissitudes of Wisconsin's climate"; (2) permitting liability would create "the potential for significant financial liability owing to the unfortunate propensity of motorists to have intersection accidents"; and (3) "the height and density of vegetation would become a factor in nearly every intersection accident case [such that] municipalities would inevitably be drawn into considerably more litigation, with its attendant costs and demands." *Id.*, 100 Wis. 2d at 266, 301 N.W.2d at 453.

¶ 7. Wagoner's Estate claims that the policies behind *Walker* do not apply to this case because in its view *Walker* "does not extend to situations where cities and counties have themselves decided to trim vegetation

and assure visibility, but have done so negligently and poorly." Stated another way, it argues that this case is distinguishable because the City was not negligent due to a failure to act; rather, it voluntarily undertook the task of cutting the vegetation on the median strip, and thus, once it began mowing, it had a duty to do so with reasonable care. We disagree.

¶ 8. Under *Walker*, municipalities do not have a duty to cut roadside vegetation. *Walker* does not distinguish between municipalities that are negligent because they have not cut roadside vegetation at all and municipalities that cut roadside vegetation, but do so negligently. Rather, the immunity in *Walker* is all-inclusive because it precludes courts from even reaching the duty issue. *See id.*, 100 Wis. 2d at 266–267, 301 N.W.2d at 453–454 ("Because we conclude there should be no common law liability imposed upon the defendant municipalities for injuries caused by uncut vegetation obscuring motorists' vision . . . we need not address the issue raised by the plaintiffs whether the weed control program followed by the county . . . amounted to the assumption of a duty which [it] would have been bound to carry out in a non-negligent manner."). Significantly, *Walker* has been extended to protect municipalities from common law liability where they have taken affirmative steps to maintain their roadways, but have allegedly done so in a negligent manner. *See Sanem v. Home Ins. Co.*, 119 Wis. 2d 530, 535, 541, 350 N.W.2d 89, 91, 94 (1984) (municipality is entitled to immunity where plaintiffs alleged it negligently deposited snow on the median strip of a highway obstructing their vision).

¶ 9. The Estate also argues that Wis. Stat. § 80.01(3) creates an exception to *Walker* by imposing a

duty upon municipalities to cut roadside vegetation planted for beautification or erosion-prevention purposes. The Estate contends that § 80.01(3) has not prevented municipalities from undertaking such projects. Thus, it argues that the imposition of liability would not deter municipalities from trimming vegetation along their roadways. We disagree.

¶ 10.  Although the legislature has, in § 80.01(3), mandated that the governmental authority encompassed by that provision "shall remove, cut or trim or consent to the removing, cutting or removal of any tree, shrub or vegetation in order to provide safety to users of the highway," it has not also created a private cause of action for damages caused by a failure to comply with that mandate. *See Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 658, 476 N.W.2d 593, 600–601 (Ct. App. 1991) ("For a rule or statute to form a basis for civil liability, expression of legislative intent is necessary that the section become a basis for such liability."). In view of *Walker*, we will not step in and create such liability, especially in light of the potential costs that *Walker* recognizes would cascade upon governmental authorities if they were dragged into every lawsuit where overgrown vegetation might possibly be a contributing factor to an accident. If the rule against governmental liability is to be abrogated, it must be done by the supreme court and not by us.[3] We affirm the grant of summary judgment.

---

[3] The Estate also relies on *Kantz v. Elkhart County Highway Department*, 701 N.E.2d 608 (Ind. Ct. App. 1998), where the Indiana Court of Appeals concluded that a county was liable for its negligence in cutting down a tree but leaving the stump in a right-of-way because the county had knowledge that the stump would create an unsafe condition. *Id.* at 615. The Indiana Court

*By the Court.*—Order affirmed.

¶ 11. SCHUDSON, J. *(concurring)*. The majority acknowledges the Estate's "alluring" argument but explains that "we are bound" by *Walker v. Bignell*, 100 Wis. 2d 256, 301 N.W.2d 447 (1981). Majority at ¶ 10 n.3. I agree. Here, however, I would hope to focus on the binding language of *Walker*, the context from which that language came, and the potential for further review of whether that language has come to encompass more than the supreme court truly intended.

¶ 12. As the majority has explained, in *Walker*, the supreme court was considering "areas *adjacent* to the intersection [that] 'were so overgrown with weeds that the view of the intersection by approaching drivers was obstructed.' " Majority at ¶ 6 (quoting *Walker*, 100 Wis. 2d at 258) (emphasis added). In doing so, however, the supreme court repeatedly referred to both "roadside" vegetation and "intersection" vegetation, *see Walker*, 100 Wis. 2d at 261, 262, 264, 265, 266, 267, apparently using the terms interchangeably, and drawing no distinction between: (1) vegetation *adjacent* to

of Appeals refused to create a "blanket rule" that would "impose[] a duty upon landowners to remove every stump." *Id.* at 614. It concluded that public policy supported the imposition of liability because the county had actual knowledge of the dangerous condition. *Id.* The Estate argues that this case is similar because the City was aware of the vegetation and took steps to remove the vegetation, negligently leaving vegetation within the guardrail of the median. While this argument is alluring, we are bound by *Walker v. Bignell*, 100 Wis. 2d 256, 266–267, 301 N.W.2d 447, 453–454 (1981), which grants municipalities blanket immunity for the negligent failure to mow roadside vegetation. *See State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984) (the court of appeals is bound by prior decisions of the supreme court).

314

an intersection and vegetation *within* an intersection; or (2) vegetation a municipality had not trimmed at all and vegetation a municipality had trimmed negligently. Nevertheless, the supreme court concluded with language leaving this court no room to draw such distinctions: "there should be no common law liability imposed upon the defendant municipalities for injuries caused by uncut vegetation obscuring motorists' vision *at highway intersections*." *Walker*, 100 Wis. 2d at 266–67 (emphasis added).

¶ 13. The instant case may offer the supreme court the opportunity to consider whether *Walker*'s holding is as all-encompassing as its terms seem to suggest. Here, as the circuit court noted, "The City agrees . . . that it was responsible for maintaining the median" and, at least at this stage, "is truly . . . not contesting negligence." It is undisputed that the City had cut the vegetation in the median strip except for that area within the guardrail. The parties and the circuit court surmised that the City workers simply had not used a weed-whacker or hoisted a lawnmower over the guardrail to complete the cutting of the vegetation.

¶ 14. Thus, the City's negligence may have created an extremely dangerous condition—a condition that inevitably would lead to a tragic accident—and a condition that, at least from everyday driving experience, seems significantly distinguishable from the myriad conditions involving vegetation *adjacent* to roadsides. It seems unlikely that potential liability for such negligence would lead municipalities to abandon their proper responsibility for maintaining their highway medians. Therefore, quite possibly, the supreme court could clarify *Walker*, distinguish vegetation *adjacent* to a highway from vegetation *within* a median, and

carefully carve an exception that would enhance highway safety without undermining the sound public policies articulated in *Walker*.[1]

¶ 15.  Accordingly, I respectfully concur.

---

[1] In *Sanem v. Home Insurance Co.*, 119 Wis. 2d 530, 535, 350 N.W.2d 89 (1984), the supreme court did extend the rationale of *Walker v. Bignell*, 100 Wis. 2d 256, 301 N.W.2d 447 (1981), to a case involving an accident allegedly resulting from an obstruction within a highway median. The obstruction, however, was the result of allegedly negligent snow removal, and the supreme court specifically grounded its holding in "the physical properties of snow and the nature of snow plowing," and the "emergent situation" created by heavy snowfall. *Sanem*, 119 Wis. 2d at 540–41. Here, obviously, the circumstances are quite different, and motorists' reasonable expectations of intersection visibility and their resulting vigilance certainly may vary according to whether they are driving in snowy or snowless conditions.